Mark J. Austin (SBN 208880)
maustin@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
18300 Von Karman Avenue, Suite 650
Irvine, California 92612-1032
Tel: 949.863.3363 Fax: 949.863.3350

Attorneys for Defendants
CITY OF TORRANCE and RYAN
CADIZ

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MARIA SALAZAR,<br><br>          Plaintiff,<br><br>          v.<br><br>CITY OF TORRANCE, RYAN CADIZ, AND JOHN ESCARENO JR.,<br><br>          Defendants. | Case No. 2:24-CV-07692-DMG-JC<br><br>Judge: Hon. Dolly M. Gee<br>Dept.: 8C<br><br>**DEFENDANTS CITY OF TORRANCE AND RYAN CADIZ'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**[FRCP 56]**<br><br>**Hearing:**<br>Date: February 6, 2026<br>Time: 2:00 p.m.<br>Dept.: 8C |

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
ORANGE COUNTY

Case No. 2:24-CV-07692-DMG-JC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

## <u>NOTICE OF MOTION FOR SUMMARY JUDGMENT</u>

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE that, on **February 6, 2026, at 2:00 p.m.**, or as soon thereafter as the matter may be heard in Courtroom 8C of the above-entitled Court, located at 350 West First St., Suite 4311, Los Angeles, California, Defendants City of Torrance ("City") and Ryan Cadiz ("Cadiz," and collectively with City, "Defendants") will, and hereby do, move this Court for an order granting summary judgment on all claims for relief that are alleged against them in the operative First Amended Complaint ("FAC") [Dkt. 1-2] in this case, filed by Plaintiff Maria Salazar ("Plaintiff").

This motion is made pursuant to Rule 56 of the Federal Rules of Civil Procedure, on the grounds that there is no genuine dispute as to any material fact with respect to any of the claims against Defendants in the FAC and Defendants are entitled to judgment on all claims in the FAC as a matter of law.

This Motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the accompanying Declaration of Officer Ryan Cadiz, Declaration of Sgt. Michael Guell, and Declaration of Mark J. Austin, and the exhibits thereto, the accompanying Request for Judicial Notice and the exhibits attached thereto, the accompanying Notice of Lodging of Defendants' Exhibit 1 (a video)[1], the accompanying Statement of Uncontroverted Facts and Conclusions of Law, this Court's file, and such further evidence, both oral and documentary, as may be presented at or before the hearing on this Motion.

---

[1] The dashcam video in Exhibit 1, in addition to being delivered via thumb drive, can be downloaded at the following link (Declaration of Mark J. Austin, ¶¶ 2-3): https://vault.netvoyage.com/neWeb2/delView.aspx?env=%2FQ13%2Fv%2Fd%2F2%2F9%2F~260109123618774.nev&dn=1&v=1&dl=1&p=0&e=&t=01l0OwV3e7PCh8E0xuesUErjP%2F4%3D&cg=NG-LPATW7I1&hd=1&nf=N&s=VAULT-brown-sm

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
ORANGE COUNTY

Case No. 2:24-CV-07692-DMG-JC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

1    This Motion is made following the conference of counsel required by Central

2 District Local Rule 7-3, which took place on December 15, 2025, in a telephone

3 conversation between counsel for Defendants (Mark J. Austin) and counsel for

4 Plaintiff (Cooper Mayne). (Declaration of Mark J. Austin, ¶ 4.)

5

6 Dated: January 9, 2026                    BURKE, WILLIAMS & SORENSEN, LLP

7

8

9                                  By: _____

10                                       Mark J. Austin
                                         Attorneys for Defendants
11                                       CITY OF TORRANCE and RYAN
                                         CADIZ
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
ORANGE COUNTY

Case No. 2:24-CV-07692-DMG-JC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

1
2

# **TABLE OF CONTENTS**

**Page**

3  I.    INTRODUCTION .................................................................................... 1

4  II.   STATEMENT OF FACTS ....................................................................... 3

5        A.    Plaintiff's Allegations ................................................................ 3

6        B.    Video Footage of the Incident.................................................... 3

7        C.    Detailed Account of the Pursuit and Collision ......................... 4

8        D.    Escareno Plea and Conviction ................................................... 8

9        E.    Torrance Police Department Maintains a Vehicular-Pursuit
               Policy Consistent with Vehicle Code Section 17004.7; Officer
10             Cadiz's Actions Were Determined to be Within Policy by the
               TPD ............................................................................................. 8

11 III.  STANDARD OF REVIEW...................................................................... 10

12 IV.   ARGUMENT ........................................................................................... 11

13       A.    The City is Immune from Liability for Plaintiff's State-Law
14             Claims Under California Vehicle Code section 17004.7...................... 11

15       B.    Officer Cadiz is Immune from Liability for Plaintiff's State-Law
               Claims Under California Vehicle Code section 17004...................... 14

16       C.    Plaintiff's State-Law Claims Against the City Also Fail Because
17             Plaintiff Has Failed to Identify a Statutory Basis for Liability............ 15

18       D.    Plaintiff's Excessive Force Claim Fails ................................................ 16

19       E.    Plaintiff's Substantive Due Process Claim Against Cadiz Fails .......... 18

20 V.    CONCLUSION ........................................................................................ 20

21
22
23
24
25
26
27
28

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Orange County

i

Case No. 2:24-CV-07692-DMG-JC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Federal Cases

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ........................................................................... 10

*Brower v. County of Inyo*,
   489 U.S. 593 (1989) ........................................................................... 16

*Bublitz v. Cottey*,
   327 F.3d 485 (7th Cir. 2003) ............................................................ 17

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*,
   213 F.3d 474 (9th Cir. 2000) ............................................................ 10

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ........................................................................... 10

*Claybrook v. Birchwell*,
   199 F.3d 350 (6th Cir. 2000) ........................................................ 2, 17

*Cline v. Indus. Maint. Eng'g & Contracting Co.*,
   200 F.3d 1223 (9th. Cir. 2000) ......................................................... 10

*County of Sacramento v. Lewis*,
   523 U.S. 833 (1998) ......................................................... 2, 16, 19, 20

*Ewolski v. City of Brunswick*,
   287 F.3d 492 (6th Cir. 2002) ............................................................ 17

*Moreland v. Las Vegas Metropolitan Police Department*,
   159 F.3d 365 (9th Cir. 1998) ............................................................ 19

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,
   210 F.3d 1099 (9th Cir. 2000) .......................................................... 11

*Onossian v. Block*,
   175 F.3d 1169 (9th Cir. 1999) ................................................. 2, 19, 20

*Rodriguez v. City of Fresno*,
   819 F. Supp. 2d 937 (E.D. Cal. 2011) ........................................ 17, 18

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Orange County

ii

Case No. 2:24-CV-07692-DMG-JC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

*Rodriguez v. County of Los Angeles*,
  654 F. Supp. 3d 1029 (C.D. Cal. 2023)................................................................18

*Estate of Tucker v. Interscope Records*,
  515 F.3d 1019 (9th Cir. 2008).............................................................................11

**State Cases**

*Brumer v. City of Los Angeles*,
  24 Cal.App.4th 983 (1994)............................................................................1, 13

*City of Sacramento v. Super. Ct.*,
  131 Cal.App.3d 395 (1982)..................................................................................14

*Cruz v. Briseno*,
  22 Cal.4th 568 (2000)..........................................................................................14

*Doe v. Los Angeles County Dept. of Children & Family Services*,
  37 Cal.App.5th 675 (2019).............................................................................2, 15

*Hilts v. Solano Cty.*,
  265 Cal. App. 2d 161 (1986)...............................................................................15

*Kishida v. State of California*,
  229 Cal.App.3d 329 (1991) ...........................................................................1, 13

*McCarty v. State of California Dept. of Transp.*,
  164 Cal.App.4th 955 (2008) ...............................................................................16

*Nguyen v. City of Westminster*,
  103 Cal.App.4th 1161 (2002) ........................................................................1, 13

*Searcy v. Hemet Unified School Dist.*,
  177 Cal.App.3d 792 (1986).............................................................................2, 15

*Weaver v. State of Cal.*,
  63 Cal.App.4th 188 (1998)..................................................................................14

**Federal Statutes**

42 U.S.C. section 1983 ...........................................................................................3, 11

**State Statutes**

Cal. Gov. Code § 815 ..............................................................................................2, 15

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
ORANGE COUNTY

iii

Case No. 2:24-CV-07692-DMG-JC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

Cal. Pen. Code

§ 13519.8 .................................................................................... 8, 12

§ 13519.8(b) ................................................................................ 9, 12

Cal. Veh. Code

§ 17004 ...................................................................................... 1, 14

§ 17004.7 .................................................................................. *passim*

§ 17004.7(b) ................................................................................ 1, 11

§ 17004.7(b)(2) ................................................................................. 11

§ 17004.7(c) ......................................................................... 1, 9, 11, 12

§ 17004.7(d) ................................................................................ 1, 11

## Other Authorities

Fed. R. Civ. P. 56(a) .......................................................................... 10

Fourteenth Amendment ........................................................... 2, 3, 18, 19

Fourth Amendment ....................................................................... *passim*

https://vault.netvoyage.com/neWeb2/delView.aspx?env=%2FQ13%2F
    v%2Fd%2F2%2F9%2F~260109123618774.nev&dn=1&v=1&dl=1
    &p=0&e=&t=01l0OwV3e7PCh8E0xuesUErjP%2F4%3D&cg=NG-
    LPATW7I1&hd=1&nf=N&s=VAULT-brown-sm ............................................ 4

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
ORANGE COUNTY

Case No. 2:24-CV-07692-DMG-JC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

# I.    **INTRODUCTION**

This case arises from a vehicular pursuit involving the Torrance Police Department. (First Amended Complaint ("FAC") ¶¶ 11-16 [Dkt. 1-2].) Plaintiff Maria Salazar ("Plaintiff") was struck during that pursuit, when Defendant Ryan Cadiz ("Cadiz"), a police officer with Defendant City of Torrance ("City"), executed a low-speed "PIT maneuver" to stop the fleeing suspect's vehicle, which then struck Plaintiff in a crosswalk while the suspect's vehicle was coming to a stop. (*Id.*; Declaration of Officer Ryan Cadiz ("Cadiz Decl.") ¶¶ 3-14; Exh. 1 [video].)

Defendants City and Cadiz (collectively, "Defendants") are entitled to summary judgment for multiple reasons. With respect to Plaintiff's state-law claims, Defendants are entitled to statutory immunity relating to vehicular pursuits under California Vehicle Code sections 17004.7 (for the City) and 17004 (for Cadiz).

Section 17004.7 confers immunity on the City so long as it maintains and promulgates a vehicular-pursuit policy that meets the requirements of that section, even if the policy was not followed in a particular case, as Plaintiff alleges here. Cal. Veh. Code § 17004.7(b), (c), (d); *Nguyen v. City of Westminster*, 103 Cal.App.4th 1161, 1167 (2002) (superseded by statute on other grounds, Cal. Stats. 2005, ch. 485, § 10); *Brumer v. City of Los Angeles*, 24 Cal.App.4th 983, 987 (1994) (same); *Kishida v. State of California*, 229 Cal.App.3d 329, 337 (1991) (superseded by statute on other grounds as stated in *Morgan v. Beaumont Police Department*, 246 Cal.App.4th 144 (2016)). Because the policy requirements of Section 17004.7 were met by the City here, the City is entitled to immunity on Plaintiff's state-law claims. (Declaration of Sgt. Micheal Guell ("Guell Decl.") ¶¶ 3-6; Exh. 2 [policy].)

Similarly, Section 17004 confers immunity on Cadiz for injuries resulting from his operation of an emergency police vehicle in the line of duty, while in pursuit of a suspect. Cal. Veh. Code § 17004. This was the case here, according to the undisputed evidence and Plaintiff's own allegations. (FAC ¶¶ 11-16 [Dkt. 1-2]; Cadiz Decl. ¶¶ 3-14; Exh 1 [dashcam video].)

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
ORANGE COUNTY

1

Case No. 2:24-CV-07692-DMG-JC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

Furthermore, the City is also entitled to summary judgment on Plaintiff's state-law claims because Plaintiff failed to identify a statutory basis for liability against the City, and the City cannot be held liable under the common-law causes of action she alleges against the City. Cal. Gov. Code § 815; *Doe v. Los Angeles County Dept. of Children & Family Services*, 37 Cal.App.5th 675, 686 (2019) ("[i]n California, a public entity is not liable for an injury arising from an act or omission of the public entity or a public employee except as provided by statute . . . [t]hus, a common law negligence claim may not be asserted against [a county]"); *Searcy v. Hemet Unified School Dist.*, 177 Cal.App.3d 792, 798 (1986) ("[s]ince the duty of a governmental agency can only be created by statute or 'enactment,' the statute or 'enactment' claimed to establish the duty must at the very least be identified").

Finally, Defendants are also entitled to summary judgment on Plaintiffs' two federal claims—her claim for "excessive force" under the Fourth Amendment (Seventh Claim for Relief) and her claim for violation of "substantive due process" under the Fourteenth Amendment (Eighth Claim for Relief). Plaintiff's excessive-force claim fails because that theory only applies when force is ***intentionally*** applied to the plaintiff as part of an attempt to arrest (*i.e.*, "seize") the plaintiff. *County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998) ("*Lewis*"); *Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000). Because Cadiz did not attempt to seize Plaintiff, and no force was applied to her intentionally or directly, this claim fails.

Meanwhile, Plaintiff's substantive due process claim fails because such a claim only arises when the government's conduct "shocks the conscience," which, in the context of vehicular pursuits, requires an "***intent to harm***" the plaintiff. *Lewis,* 523 U.S. at 846-47 (emphasis added); *Onossian v. Block*, 175 F.3d 1169, 1171–72 (9th Cir. 1999). Here, because there are no facts that would support such an egregious conclusion from Cadiz's reasonable conduct, this claim likewise fails.

For all these reasons, Defendants are entitled to summary judgment.

\ \ \

## II. **STATEMENT OF FACTS**

### A. **Plaintiff's Allegations**

According to the FAC, this case arises from "a collision between a Torrance Police Department patrol vehicle and an automobile that occurred on or about January 11, 2024 . . . (the 'COLLISION') which resulted in physical impact and injuries to Plaintiff who was lawfully crossing the street as a pedestrian." (FAC ¶ 11 [Dkt. 1-2].) Plaintiff alleges that Defendant Cadiz "was the driver of the Torrance Police Department patrol vehicle involved in the COLLISION and through employment by TORRANCE," and that Defendant John Escareno ("Escareno") "was the driver of the allegedly carjacked vehicle." (*Id.* at ¶¶ 12-14.)

Plaintiff alleges that the collision occurred when Cadiz used a "Pursuit Intervention Techniques (PIT maneuver)" against Escareno's vehicle, which "resulted in Plaintiff being struck by the vehicle [Escareno] was driving." (*Id.* at ¶ 16.) Plaintiff further alleges that Cadiz's use of the PIT maneuver was inconsistent with the vehicular-pursuit policy of the Torrance Police Department ("TPD") in various respects, and that his use of the PIT maneuver was unreasonable under the circumstances. (*Id.* at ¶¶ 16-19, 40, 43, 61.)

Based on these allegations, Plaintiff alleges six state-law claims against the City and Cadiz, for "motor vehicle negligence," "general negligence," "strict liability for ultrahazardous activity," "intentional infliction of emotional distress," "negligent infliction of emotional distress," and "battery." (FAC pp. 5-10 [Dkt. 1-2].) In addition, Plaintiff alleges two federal claims under 42 U.S.C. section 1983, for "excessive force" under the Fourth Amendment, and for violation of substantive due process under the Fourteenth Amendment. (*Id.* at pp. 10-12.)

### B. **Video Footage of the Incident**

Submitted herewith as **Exhibit 1** is video of the incident from the dashboard camera of Officer Cadiz's vehicle, which aptly demonstrates what occurred, including the many dangerous actions engaged in by Defendant Escareno during the

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
ORANGE COUNTY

3

Case No. 2:24-CV-07692-DMG-JC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

1    pursuit. (Cadiz Decl. ¶ 3.)[2]

2        Exhibit 1 shows the entirety of the pursuit, including but not limited to (1) the

3    moment Cadiz received a radio report that Escareno had stolen a silver Toyota Prius

4    (the second car he had stolen that day) (Exh. 1 at 0:00:30 – 0:00:55), (2) the

5    moment—about a minute later—when Cadiz first tried to "box in" Escareno at the

6    corner of Carson Street and Del Amo Circle to prevent him from fleeing, but

7    Escareno escaped by driving around him (*id.* at 0:01:25 – 0:01:43), (3) the

8    approximately four-minute pursuit that followed, including Escareno's many

9    dangerous, high-speed evasion tactics, such as driving on the wrong side of the road

10   at high speeds and driving on the sidewalk (*id.* at 0:01:43 – 0:05:26), (4) Cadiz's

11   PIT maneuver, and the impact of Escareno's vehicle on Plaintiff (*id.* at 0:05:13 –

12   0:05:26), (5) the initial discussions with and evaluations of Plaintiff by emergency

13   personnel, during which she stood of her own volition and appeared uninjured (*id.* at

14   0:05:36 – 0:18:20), and (6) the moment Plaintiff walked (on her own and while still

15   carrying multiple grocery bags) towards an ambulance (*id.* at 0:18:20 – 0:18:54).

16       Most importantly, this footage shows the many dangerous actions of Escareno

17   while fleeing, including reaching speeds of 80-90 miles per hour (Cadiz Decl. ¶ 8),

18   ***running multiple red lights***, driving on the ***wrong side of the road multiple times***,

19   and driving on the ***sidewalk***, all of which occurred in populated and congested areas.

20   (*See* Exh. 1 at 0:01:43 – 0:05:26; Cadiz Decl. ¶¶ 8-9.)

21       **C.    Detailed Account of the Pursuit and Collision**

22       The following account is testified to in the accompanying declaration of

23   Defendant Ryan Cadiz. The references to timestamps are from Exhibit 1.

24

25   [2] The dashcam video in Exhibit 1, in addition to being delivered via thumb drive,
26   can be downloaded at the following link (Declaration of Mark J. Austin, ¶¶ 2-3):
     https://vault.netvoyage.com/neWeb2/delView.aspx?env=%2FQ13%2Fv%2Fd%2F2
27   %2F9%2F~260109123618774.nev&dn=1&v=1&dl=1&p=0&e=&t=01l0OwV3e7P
     Ch8E0xuesUErjP%2F4%3D&cg=NG-LPATW7I1&hd=1&nf=N&s=VAULT-
28   brown-sm

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
ORANGE COUNTY

4

Case No. 2:24-CV-07692-DMG-JC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

On January 11, 2024, Officer Cadiz of the TPD was patrolling near the Del Amo Fashion Center in Torrance, when he received a radio report from the Los Angeles Sheriff's Department air support that it was in pursuit of a vehicle that had been carjacked from the Walmart parking lot at 190th Street and Normandie Avenue. (Cadiz Decl. ¶ 4.) The report advised that the suspect's car had pulled into the parking structure near Carson Street and Del Amo Circle East, where Cadiz was patrolling. (*Id.*) In response, Cadiz began to canvass the area, at which point he heard over the radio that the carjacked vehicle had been located, without any occupants, by Officer Ricky Lopez, also with the TPD. (*Id.*)

Shortly thereafter, Cadiz received a radio communication that the suspect (later identified as Escareno) had stolen a different vehicle—a silver Toyota Prius—and was located near the entrance to the food court of the Del Amo Center. (*Id.* at ¶ 5; Exh. 1 at 0:00:30 – 0:00:55; Defs' Req. for Judicial Notice ("RJN"), Exhs. 4 through 6 [Escareno plea records].) In response, Cadiz drove southbound on Del Amo, approaching Carson, and observed the stolen vehicle driving eastbound on Carson, in the right-hand-turn lane, as though it was intending to turn right. (Cadiz Decl. ¶ 5.)

Fearing that Escareno may attempt to flee, Cadiz attempted to "box in" the Prius with his vehicle, but Escareno was able to drive around Cadiz's vehicle and continue eastbound on Carson. (*Id.* at ¶ 6; Exh. 1 at 0:01:25 – 0:01:43.) At that point, Officer Dennis Gonsalves, also of the TPD and riding a police motorcycle, initiated a pursuit of the Prius, and Cadiz joined. (Cadiz Decl. ¶ 6; Exh. 1 at 0:01:43 – 0:01:55.) During the entirety of the pursuit that followed, Cadiz's vehicle was "Code 3," meaning its lights and sirens were activated. (Cadiz Decl. ¶ 6.)

The pursuit began eastbound on Carson, then turned southbound onto Crenshaw Boulevard, then later turned eastbound onto Sepulveda Boulevard. (*Id.* at ¶ 7; Exh. 1 at 00:02:32 – 00:02:38.) During that phase of the pursuit, Officer Gonsalves acted as the primary unit in the pursuit, and Cadiz acted as the secondary

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
ORANGE COUNTY

5

Case No. 2:24-CV-07692-DMG-JC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

unit. (*Id.* at ¶ 7.) However, when the pursuit reached Sepulveda Boulevard and Cabrillo Avenue, by order of the supervising sergeant, Officer Gonsalves relinquished primary responsibility for the pursuit, and Cadiz took over as the primary unit. (*Id.*; Exh. 1, 00:03:41 – 00:03:58.)

In total, the pursuit continued for approximately four minutes. (Cadiz Decl. ¶ 8; Exh. 1 at 0:01:43 – 0:05:26.) During that time, Escareno often drove at speeds of approximately ***80-90 miles per hour***, through congested areas with multiple cars, including near residential neighborhoods and busy shopping centers. (*Id.*; Cadiz Decl. ¶ 8.) In addition, in multiple instances, Escareno entered the ***wrong side of the street***, driving directly against the flow of traffic. (*Id.*; *see, e.g.*, Exh. 1 at 0:03:58 – 0:04:17 and 0:04:43 – 0:05:10.) Moreover, Escareno ***ran multiple red lights***, speeding through intersections despite the chance of collision. (Cadiz Decl. ¶ 8; Exh. 1 at 0:03:07 – 0:03:15 (turning against oncoming traffic), 0:03:34 – 0:03:43, 0:03:47 – 0:03:55, and 0:03:58 – 0:04:17.)  In one instance, Escareno drove approximately 80 miles per hour on the wrong side of the road and ran a red light through an intersection. (Cadiz Decl. ¶ 8; Exh. 1 at 0:03:58 – 0:04:17.)

Towards the end of the pursuit, while Escareno was driving on the wrong side of the road on Sepulveda, he suddenly turned back onto the correct side of the road and slowed down, directly in front of Cadiz. (Cadiz Decl. ¶ 9; Exh. 1 at 0:04:43 – 0:05:10.) At that point, Cadiz slowed down and hit the rear of Escareno's vehicle. (*Id.*; Cadiz Decl. ¶ 9.) Nevertheless, Escareno continued fleeing. (*Id.*; Exh. 1 at 0:05:08 – 0:05:20.) In fact, Escareno suddenly cut to the right, across all lanes of traffic, and drove onto the ***sidewalk***, colliding with various obstacles before returning to the street. (*Id.*; Cadiz Decl. ¶ 9.)

Escareno then entered the intersection on Sepulveda Boulevard and Vermont Avenue, and began to slow down, as if trying to decide which direction to continue. (Cadiz Decl. ¶ 10; Exh. 1 at 0:05:16 – 0:05:20.) In response, as he approached the intersection, Cadiz also slowed down. (*Id.*; Cadiz Decl. ¶ 10.) At this time, because

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Orange County

6

Case No. 2:24-CV-07692-DMG-JC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

of how dangerous the pursuit had been to the public due to Escareno's erratic and illegal tactics, and would continue to be if he were able to flee again, Cadiz made the decision to perform a PIT maneuver on Escareno's vehicle to stop him from fleeing further. (*Id.*; Exh. 1 at 0:05:16 – 0:05:26.) In making this decision, Cadiz believed that (a) the dangers of a further pursuit outweighed the risks of the maneuver to the suspect, the officers, or the public, and (b) that the maneuver would end the pursuit. (Cadiz Decl. ¶ 10.) The term "PIT" stands for "Pursuit Intervention Technique," and is a low-speed maneuver (35 miles per hour or less under the TPD's vehicular-pursuit training), in which an officer's vehicle makes contact with the suspect's vehicle at a certain angle, causing the suspect's vehicle to spin to a stop. (*Id.* at ¶ 11; Guell Decl. ¶ 3.)

Cadiz executed the PIT maneuver by making contact with Escareno's vehicle, causing it to spin to a stop. (Cadiz Decl. ¶ 12; Exh. 1 at 0:05:16 – 0:05:26.) At the time he made contact, both Cadiz's vehicle and Escareno's vehicle were traveling at less than 35 miles per hour, per the training of the TPD. (Cadiz Decl. ¶ 12; Guell Decl. ¶ 9.) According to a subsequent review by the TPD, the execution of the PIT maneuver was entirely within TPD policy. (*Id.* at ¶¶ 7-9; Exh. 2; Cadiz Decl. ¶ 19.)

However, after Cadiz entered the intersection, and shortly before he made contact with Escareno's vehicle, he saw a pedestrian—Plaintiff—in the vicinity. (Cadiz Decl. ¶ 13.) As a result, Cadiz immediately applied the brakes of his vehicle and attempted to disengage from the PIT maneuver to avoid any potential impact to Plaintiff, but he was unable to stop his car from making contact with Escareno's vehicle. (*Id.*) Unfortunately, as it spun out from the PIT maneuver, Escareno's vehicle struck Plaintiff. (*Id.*; Exh. 1 at 0:05:16 – 0:05:26.) In executing the maneuver, Cadiz had no intent to impact or harm Plaintiff in any way; his only intent was to contact and stop Escareno's vehicle. (Cadiz Decl. ¶ 13.)

After the collision, Plaintiff was immediately approached and evaluated by emergency personnel, including Cadiz and paramedics. (Cadiz Decl. ¶ 14; Exh. 1 at

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
ORANGE COUNTY

0:05:36 – 0:18:20.) She remained standing of her own volition during this time (*id.*), and later walked to the ambulance without assistance, while still carrying the bags she had with her (Cadiz Decl. ¶ 14; Exh. 1 at 0:18:20 – 0:18:54).

### D.    Escareno Plea and Conviction

After the vehicular pursuit, Escareno fled on foot, and was soon thereafter apprehended by the TPD nearby. (Cadiz Decl. ¶ 15.) According to California court records, Escareno eventually entered a plea deal relating to various crimes and was sentenced to, *inter alia*, 10 years in prison. (*See* RJN, Exhs. 4 through 6.)

### E.    Torrance Police Department Maintains a Vehicular-Pursuit Policy Consistent with Vehicle Code Section 17004.7; Officer Cadiz's Actions Were Determined to be Within Policy by the TPD

The TPD maintains a written policy pertaining to vehicular pursuits (Policy 307), a copy of which is submitted herewith as **Exhibit 2** (the "Pursuit Policy"). (Guell Decl. ¶ 3.) Although the Pursuit Policy is updated periodically, Exhibit 2 is the version that was in effect in January of 2024, when the incident occurred, and in November of 2023, when TPD officers were then-most-recently trained on it. (*Id.*) The Pursuit Policy covers multiple subjects relating to pursuits, including intervention techniques (such as PIT maneuvers), which are discussed primarily in Section 307.6, including Section 307.6.2. (*Id.*; Exh. 2)

The TPD created its Pursuit Policy, and its associated training curriculum provided to its officers, to be consistent with California Vehicle Code section 17004.7, California Penal Code section 13519.8, and Peace Officer Standards and Training ("POST") standards relating to vehicular pursuits. (Guell Decl. ¶ 4.)

In this regard, the City provides annual training on the Pursuit Policy, including on PIT maneuvers, to all officers of the TPD, as required by Vehicle Code section 17004.7. (*Id.* at ¶ 5; Cadiz Decl. ¶¶ 16-17.) These training requirements have been imposed by the TPD every year since 2007 (the year Section 17004.7 was adopted). (Guell Decl. ¶ 5; Cadiz Decl. ¶ 17.) The TPD's annual training on the

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
ORANGE COUNTY

8

Case No. 2:24-CV-07692-DMG-JC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

Pursuit Policy includes training on every section and topic in the Pursuit Policy, and all subjects required by Vehicle Code section 17004.7, subdivision (c), and Penal Code section 13519.8, subdivision (b).[3] (Guell Decl. ¶ 5; Cadiz Decl. ¶ 17.) At the conclusion of training on the Pursuit Policy, every officer is required to certify in writing that they have received, read, and understand the policy. (Guell Decl. ¶ 5; Cadiz Decl. ¶ 17; Exh. 3.)

TPD conducted an internal review of the pursuit in this case and determined that it was *within* TPD policy in all respects. (Guell Decl. ¶¶ 7-9; Cadiz Decl. ¶ 19.) In light of the high dangers to the public presented by the fleeing suspect, including his many dangerous and erratic tactics to avoid capture—such as driving at very high speeds through congested areas, driving on the wrong side of the street against traffic, and running multiple red lights—as well as the fact that he was suspected of carjacking two vehicles, the TPD determined that the risks presented by further pursuit outweighed the risks from the maneuver, and that it was therefore appropriate for Cadiz to execute it here, when he did. (Guell Decl. ¶ 7.)

In addition, contrary to Plaintiff's allegations, the TPD's Pursuit Policy does *not* require an officer to obtain supervisor approval for a PIT maneuver. (*Id.* at ¶ 8; Cadiz Decl. ¶ 20.) The policy states that supervisor approval should obtained "whenever practicable" (Exh. 2, § 307.6) and generally uses the term "should" on this issue (Exh. 2, § 307.6.2). (Guell Decl. ¶ 8; Cadiz Decl. ¶ 20.) This language

---

[3] The subjects required by California Penal Code section 13519.8(b) are: (1) when to initiate a pursuit; (2) the number of involved law enforcement units permitted; (3) responsibilities of primary and secondary law enforcement units; (4) driving tactics; (5) helicopter assistance; (6) communications; (7) capture of suspects; (8) termination of a pursuit; (9) supervisory responsibilities; (10) blocking, ramming, boxing, and roadblock procedures; (11) speed limits; (12) interjurisdictional considerations; (13) conditions of the vehicle, driver, roadway, weather, and traffic; (14) hazards to uninvolved bystanders or motorists; and (15) reporting and postpursuit analysis. These topics largely overlap with the topics required to be covered under California Vehicle Code section 17004.7(c).

contemplates (and officers are so taught) that it will not always be possible in a fast-changing environment for an officer to obtain supervisor approval before executing a PIT maneuver, particularly in emergency situations such as this one. (Guell Decl. ¶ 8; Cadiz Decl. ¶ 20.) Thus, it was fully consistent with the TPD's policy for Officer Cadiz to have utilized the PIT maneuver here, even without first obtaining his supervising officer's approval. (Guell Decl. ¶ 8.)

Furthermore, officers of the TPD are taught during the training on PIT maneuvers that they should be executed only at speeds of 35 miles per hour or less. (Guell Decl. ¶ 9; Cadiz Decl. ¶ 21.) Although this is not stated in writing in the Pursuit Policy, it is taught as part of the TPD's training, and is consistent with POST standards and guidelines. (Guell Decl. ¶ 9; Cadiz Decl. ¶ 21.) Officer Cadiz was in compliance with that requirement here. (Guell Decl. ¶ 9; Cadiz Decl. ¶¶ 12, 21.)

## III.    <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate where the record shows that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." <u>Fed. R. Civ. P. 56(a)</u>; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "Material" means the fact could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th. Cir. 2000). A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248.

The burden is first on the moving party to show an absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 322–23. The moving party satisfies this burden either by showing an absence of evidence to support the nonmoving party's case when the nonmoving party bears the burden of proof at trial, or by introducing enough evidence to entitle the moving party to a directed verdict when the moving party bears the burden of proof at trial. *See id*. at 325; *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000).

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
ORANGE COUNTY

In response, the non-moving party cannot "rest upon the mere allegations or denials of its pleading but must instead produce evidence that sets forth specific facts showing that there is a genuine issue for trial." *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir. 2008) (internal quotations omitted). If the non-moving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos.,* 210 F.3d 1099, 1103 (9th Cir. 2000).

## IV.   ARGUMENT

Plaintiff alleges eight claims for relief against the City and Cadiz—six state-law claims and two federal claims under Section 1983 (one of which is alleged against Cadiz only). (FAC pp. 5-12 [Dkt. 1-2].) For the reasons set forth below, Defendants are entitled to summary judgment on each of these claims for relief.

### A.    The City is Immune from Liability for Plaintiff's State-Law Claims Under California Vehicle Code section 17004.7

California Vehicle Code section 17004.7 was designed to provide immunity to public agencies in situations exactly like this. Under that statute, a public agency is immune from liability for injury or death resulting from police-vehicle pursuits so long as the public agency (1) "adopts and promulgates" a written policy regarding vehicular pursuits that meets the requirements of that section, and (2) provides "regular and periodic training on an annual basis" regarding such pursuits. Cal. Veh. Code § 17004.7(b), (c), (d). For purposes of the section, "promulgating" a policy includes a requirement that all peace officers of the agency "certify in writing that they have received, read, and understand the policy." *Id.* at § 17004.7(b)(2). However, "[t]he failure of an individual officer to sign a certification shall not be used to impose liability on an individual officer or a public entity." *Id.*

Subdivision (c) of Section 17004.7 establishes the minimum standards for the policy that must be met, including defining "pursuit," determining the circumstances in which to initiate a pursuit, and a number of other factors. Meanwhile, under

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
ORANGE COUNTY

11

Case No. 2:24-CV-07692-DMG-JC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

1    subdivision (d), "'[r]egular and periodic training' under this section means annual

2    training that shall include, at a minimum, coverage of each of the subjects and

3    elements set forth in subdivision (c) and that shall comply, at a minimum, with the

4    training guidelines established pursuant to Section 13519.8 of the Penal Code."

5         At the time of the subject incident, the City maintained the Pursuit Policy in

6    accordance with Vehicle Code section 17004.7 and Penal Code section 13519.8, a

7    copy of which is submitted herewith as **Exhibit 2**. (Guell Decl. ¶¶ 3-6; Cadiz Decl.

8    ¶¶ 16-18.) The policy meets the minimum standards promulgated by Section

9    17004.7(c), in that, among the other topics required by Section 17004.7(c), it (1)

10   defines a "vehicle pursuit" and other critical terms (Exh. 2 §§ 307.3.1), (2)

11   articulates the circumstances in which a pursuit is authorized, and the factors to

12   consider in making that determination (*e.g.*, Exh. 2 §§ 307.1, 307.3, 307.4, 307.4.1),

13   (3) addresses driving tactics and the appropriate circumstances in which to use them,

14   including speeds ***and intervention tactics*** (such as PIT maneuvers) (*e.g.*, Exh. 2 §§

15   307.4.3, 307.5.5, 307.6, 307.6.2, 307.8), (4) addresses the factors to be considered

16   and tactics to be employed in terminating a dispute, including (again) the

17   intervention tactics just referenced (*e.g.*, Exh. 2, §§ 307.4.2, 307.6, 307.6.2) (Guell

18   Decl. ¶¶ 3-4). In short, the Pursuit Policy covers every subject required to be

19   covered by Vehicle Code section 17004.7 and Penal Code section 13519.8, which

20   the policy was specifically constructed to comply with. (*Id.*)

21        Moreover, the City provides annual training on the Pursuit Policy, including

22   on PIT maneuvers, to all officers of the TPD. (*Id.* at ¶ 5; Cadiz Decl. ¶¶ 16-17.) The

23   TPD's annual training on the policy includes training on every section and topic in

24   the Pursuit Policy, as well as all subjects required by Vehicle Code section

25   17004.7(c), and Penal Code section 13519.8(b). (Guell Decl. ¶ 5; Cadiz Decl. ¶ 17.)

26   At the conclusion of training on the Pursuit Policy, every officer of the TPD is

27   required to certify in writing that they have received, read, and understand the

28   Pursuit Policy. (Guell Decl. ¶ 5; Cadiz Decl. ¶ 17; Exh. 3.)

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
ORANGE COUNTY

12

Case No. 2:24-CV-07692-DMG-JC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

1    In sum, the City has met all of the requirements of Section 17004.7, including

2 adoption and promulgation of an appropriate policy, attestation by its officers that

3 they have reviewed and understood the policy, and appropriate annual training. As

4 such, the City is immune from any liability for the subject pursuit. For this reason

5 alone, summary judgment should be entered in the City's favor.

6    Furthermore, contrary to Plaintiffs' contentions in her FAC, it is irrelevant to

7 this immunity that Officer Cadiz allegedly failed to follow the Pursuit Policy. Under

8 California law, if the public agency's policy meets the minimum requirements of

9 Vehicle Code section 17004.7, immunity results, period. *See Nguyen*, 103

10 Cal.App.4th 1161, 1167 (police officer's alleged failure to comply with pursuit

11 policy did not negate city's immunity) (superseded by statute on other grounds,

12 Stats. 2005, ch. 485, § 10); *Brumer*, 24 Cal.App.4th 983, 987 ("The statute is clear:

13 if the agency adopts a pursuit policy which meets the statutory requirements, then

14 immunity results. The extent to which the policy was implemented in general and

15 was followed in the particular pursuit is irrelevant.").

16    Thus, for the immunity to apply, the public entity is not required to prove that

17 its policy was followed during the pursuit. *Kishida*, 229 Cal.App.3d 329, 337

18 ("Nowhere does the statute require that the grant of immunity be predicated on

19 proof that the pursuing officer followed the standards and the guidelines, contained

20 in the policy, during a given chase for which immunity is sought. Had the

21 Legislature intended that the employer-entity prove in each instance that the

22 employee-officer followed the guidelines in order to invoke the immunity, the

23 statute would have said so.") (superseded by statute on other grounds as stated in

24 *Morgan*, 246 Cal.App.4th 144).

25    Thus, although the undisputed facts clearly show that Cadiz acted

26 appropriately and in full compliance with the City's Pursuit Policy, any questions

27 Plaintiff attempts to raise in that regard would be irrelevant, and the City would be

28 entitled to full immunity on Plaintiff's state-law claims regardless.

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Orange County

13                    Case No. 2:24-CV-07692-DMG-JC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

### B.    Officer Cadiz is Immune from Liability for Plaintiff's State-Law Claims Under California Vehicle Code section 17004

Separate from the City's immunity, Cadiz is immune from liability under Section 17004, which provides immunity to "public employees" for injury or death "resulting from the operation, in the line of duty, of an authorized emergency vehicle while responding to an emergency call or when in the immediate pursuit of an actual or suspected violator of the law, or when responding to but not upon returning from a fire alarm or other emergency call." Cal. Veh. Code § 17004.

Here, the undisputed evidence demonstrates that, when Defendant Escareno's vehicle struck Plaintiff following Cadiz's PIT maneuver, Cadiz—an officer of the TPD, employed by the City of Torrance—was "in the immediate pursuit of an actual or suspected violator of the law." (Cadiz Decl. ¶¶ 3-15; Exh. 1.) Indeed, Plaintiff's own allegations assert that it was the pursuit of Escareno by Cadiz that led to her injuries, and that Cadiz is employed by the City. (FAC ¶¶ 12, 11-16 [Dkt. 1-2].)

Although Plaintiff asserts that Officer Cadiz was negligent in the pursuit, particularly in executing the PIT maneuver (*id.*), such allegations do not circumvent the immunity of Section 17004. That immunity bars claims even if the officer engaged in negligent or intentional conduct during the pursuit. *See Cruz v. Briseno*, 22 Cal.4th 568, 572-573 (2000); *see also Weaver v. State of Cal.*, 63 Cal.App.4th 188, 202 (1998) (Section 17004 immunity extends to pursuing officers despite their deliberate conduct in ramming vehicle in which the plaintiff was riding); *City of Sacramento v. Super. Ct.*, 131 Cal.App.3d 395, 400 (1982) (immunity despite negligent failure to activate red lights and sirens).

It is undisputed that, when Escareno's vehicle struck Plaintiff following the PIT maneuver, Cadiz was "in the line of duty" and "in the immediate pursuit of an actual or suspected violator of the law." (Cadiz Decl. ¶¶ 3-15; Exh. 1; FAC ¶¶ 11-16 [Dkt. 1-2]; *see also* RJN, Exhs. 4 through 6.) Accordingly, Section 17004 bars all of Plaintiff's state-law claims against Officer Cadiz.

C.    **Plaintiff's State-Law Claims Against the City Also Fail Because Plaintiff Has Failed to Identify a Statutory Basis for Liability**

In addition to the immunity set forth above, the City is also entitled to summary judgment on Plaintiff's state-law claims because she failed to identify any statutory basis for liability against the City. (FAC pp. 5-8 [Dkt. 1-2].) In California, government liability is dependent on the existence of an authorizing statute. Cal. Gov. Code § 815. Government Code section 815 states that, "*[e]xcept as otherwise provided by statute* . . . a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." (Emphasis added.) The Legislative Committee Comments for Section 815 specifically admonish that "[t]his section abolishes all common law or judicially declared forms of liability for public entities . . . ," and that "the practical effect of this section is to eliminate any common law governmental liability for damages arising out of torts." Cal. Gov. Code § 815 (Leg. Committee Comm.); *Doe*, 37 Cal.App.5th 675, 686; *Searcy*, 177 Cal. App. 3d 792, 798 ("Since the duty of a governmental agency can only be created by statute or 'enactment,' the statute or 'enactment' claimed to establish the duty must at the very least be identified."); *Hilts v. Solano Cty.*, 265 Cal. App. 2d 161, 171 (1986) ("The cases do make plain, however, that a verdict against a county must be overturned if it is erroneously based on a negligence theory…. [because] a public entity is not liable for an injury except as provided by statute."). In other words, without an identified statutory basis for establishing the City's liability, Plaintiff may not sue the City.

Here, Plaintiff has failed to identify any statute that is applicable to the City and on which a city's liability can be based. Meanwhile, her common law claims for "motor vehicle negligence," "general negligence," "strict liability for ultrahazardous activity," "intentional infliction of emotional distress," "negligent infliction of emotional distress," and "battery" (FAC pp. 5-10 [Dkt. 1-2]) cannot be plead against a public agency, as they are not based on any statute. *See e.g.*, *Doe*, 37 Cal.App.5th

1   at 686 ("[i]n California . . . a common law negligence claim may not be asserted

2   against [a county]"); *McCarty v. State of California Dept. of Transp.*, 164

3   Cal.App.4th 955, 977 (2008) (in California, "a public entity cannot be held liable for

4   common law negligence").

5       Under this law, absent Plaintiff's ability to identify a statutory basis on which

6   the City's liability can be based, her claims against the City fail as a matter of law.

7       ### D.  <u>**Plaintiff's Excessive Force Claim Fails**</u>

8       Plaintiff's Seventh Claim for Relief alleges that Cadiz used excessive force

9   against her in violation of the Fourth Amendment. This claim fails because Plaintiff,

10  an uninvolved pedestrian bystander, was never "seized" within the meaning of the

11  Fourth Amendment.

12      The Fourth Amendment protects against unreasonable seizures. U.S. Const.

13  amend. IV. Under U.S. Supreme Court precedent, a seizure occurs only when there

14  is a "'governmental termination of freedom of movement through means

15  ***intentionally*** applied.'" *County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998)

16  ("*Lewis*") (quoting *Brower v. County of Inyo*, 489 U.S. 593, 597 (1989) (emphasis

17  added). The Supreme Court has emphasized that the Fourth Amendment "addresses

18  'misuse of power,' not the ***accidental*** effects of otherwise lawful government

19  conduct." *Brower*, 489 U.S. at 596 (quoting *Byars v. United States*, 273 U.S. 28, 33

20  (1927) (emphasis added). Accordingly, for the Fourth Amendment to apply,

21  Plaintiff must show that force was intentionally applied to her for the purpose of

22  restraining her liberty. *Brower*, 489 U.S. at 596-97; *Lewis*, 523 U.S. at 844.

23      Courts applying this precedent hold that innocent bystanders injured because

24  of police efforts to apprehend suspects are not seized under the Fourth Amendment.

25  As the Sixth Circuit Court of Appeals explained in *Claybrook*:

26      [T]he Fourth Amendment 'reasonableness' standard does not apply to
        section 1983 claims which seek remuneration for physical injuries
27      ***inadvertently inflicted upon an innocent third party*** by police
        officers' use of force while attempting to seize a perpetrator, because
28      the authorities could not 'seize' any person other than one who was a

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Orange County

16

Case No. 2:24-CV-07692-DMG-JC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

1  deliberate object of their exertion of force.

2  *Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000) (emphasis added). In

3  *Claybrook*, a bystander was injured during a police shootout with an armed suspect.

4  The court held that the bystander could not maintain an excessive force claim

5  because she was not the intended object of police force and her alleged injuries fell

6  outside the Fourth Amendment's scope. *Id.*

7      Similarly, in *Ewolski v. City of Brunswick*, 287 F.3d 492 (6th Cir. 2002), the

8  Sixth Circuit again emphasized that Fourth Amendment protections hinge on

9  whether police intentionally restrained the plaintiff's liberty. There, the court held

10  that the wife and child of the barricaded suspect were not seized because police

11  actions were directed at neutralizing the suspect and rescuing the family, not

12  restraining them. *Id.* at 507. The court explained that police control over a dangerous

13  situation does not amount to a seizure unless the plaintiff was the deliberate object

14  of police restraint. *Id.* at 506–07.

15      The Seventh Circuit applied the same principle in the pursuit context in

16  *Bublitz v. Cottey*, 327 F.3d 485 (7th Cir. 2003). There, officers deployed a tire-

17  deflation device to stop a fleeing armed robbery suspect during a high-speed chase.

18  Like the present case, ***after striking the device, the suspect lost control and collided***

19  ***with a minivan, killing an innocent mother and child***. Affirming summary

20  judgment for the officers, the Seventh Circuit held that the victims were not

21  seized—and thus had no Fourth Amendment claim—because the police conduct was

22  intended to stop the suspect, not the bystanders. *Id.* at 489.

23      District courts, including California courts, have consistently followed this

24  authority. In *Rodriguez v. City of Fresno*, 819 F. Supp. 2d 937 (E.D. Cal. 2011), the

25  plaintiff was shot by police during their attempt to apprehend her boyfriend.

26  Granting summary judgment on the Fourth Amendment claim, the court held that

27  the plaintiff was not seized because the officer's actions were focused on the suspect

28  and not intended to restrain the plaintiff. *Id.* at 947-48. The court explained that "a

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
ORANGE COUNTY

17

Case No. 2:24-CV-07692-DMG-JC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

1    plaintiff that is injured collaterally or incidentally to the application of force by

2    police against a third party cannot maintain a Fourth Amendment claim," regardless

3    of the severity of the injury or the reasonableness of the force used. *Id.* at 946.

4         That same rule has been applied by courts in this District. In *Rodriguez v.*

5    *County of Los Angeles*, 654 F. Supp. 3d 1029 (C.D. Cal. 2023), a deputy fired a shot

6    intended for a fleeing suspect, but the bullet missed and struck an innocent

7    bystander. The court held that the bystander was not seized within the meaning of

8    the Fourth Amendment because he was not the intended target of the use of force.

9    *Id.* at 1045-48. Relying on *Brower* and *Lewis*, the court emphasized that "the Fourth

10   Amendment recognizes 'a distinction between an act directed toward someone that

11   produces a particular result (which would amount to a Fourth Amendment "seizure"

12   and an act that simply causes a particular result that was not sought.'" *Id.* at 1045

13   (quoting *Arruda v. County of Los Angeles*, 2008 WL 11411632, at *1, 2008 U.S.

14   Dist. LEXIS 71316, at *2-3 (C.D. Cal. Aug. 5, 2008)). Because any restraint of the

15   plaintiff's freedom of movement was accidental rather than intentional, the court

16   granted summary judgment on the excessive force claim. *Id.*

17        Here, Plaintiff cannot satisfy the threshold requirement of establishing a

18   seizure under the Fourth Amendment. Cadiz's actions were directed solely at

19   Escareno's vehicle, and any impact to Plaintiff was incidental and not intended.

20   (Cadiz Decl. ¶¶ 3-14; Exh. 1.) Plaintiff was not a suspect and was not the intended

21   object of any force. (Cadiz Decl. ¶¶ 13-14; Exh. 1.) Under the above authorities,

22   Defendant Cadiz is entitled to summary judgment on this claim.

23        **E.    Plaintiff's Substantive Due Process Claim Against Cadiz Fails**

24        Plaintiff's Eighth Claim for Relief asserts that Cadiz violated Plaintiff's

25   substantive due process rights under the Fourteenth Amendment. Under binding

26   Supreme Court and Ninth Circuit authority, this claim fails as a matter of law.

27        The Supreme Court's decision in *Lewis* again supplies the controlling

28   framework. *Lewis* held that government action violates substantive due process only

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
ORANGE COUNTY

18

Case No. 2:24-CV-07692-DMG-JC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

when it "shocks the conscience," and that, in the context of police pursuits, this standard is met only when an officer acts with a ***"purpose to cause harm unrelated to the legitimate object of arrest."*** *Id*. at 836, 846-47 (emphasis added). The Ninth Circuit has emphasized that *Lewis* establishes a categorical rule for pursuit cases. Where officers are required to make split-second decisions in a rapidly evolving and dangerous situation, neither negligence nor deliberate indifference suffices. Only conduct undertaken with intent to harm for reasons unrelated to law enforcement can support liability. *Onossian*, 175 F.3d 1169, 1171–72. This demanding standard reflects a deliberate constitutional choice: "the Constitution does not guarantee due care on the part of state officials." *Lewis*, 523 U.S. at 849.

The Ninth Circuit has applied *Lewis* to reject substantive due process claims arising from police pursuits that result in injury to third parties. In *Onossian*, motorists were seriously injured when a fleeing suspect collided with their vehicle during a police pursuit. The Ninth Circuit affirmed summary judgment for the officers, holding that the plaintiffs could not establish a substantive due process violation because there was no evidence that the officers intended to cause harm to anyone, but only that they were "attempting to remove a dangerous driver from the streets." 175 F.3d at 1172.

Likewise, in *Moreland v. Las Vegas Metropolitan Police Department*, which involved an innocent bystander who was shot accidentally by a police officer during an active shooter situation, the Ninth Circuit reaffirmed that substantive due process liability requires conduct that "shocks the conscience" in cases involving injury to innocent bystanders resulting from law-enforcement action. 159 F.3d 365, 372–73 (9th Cir. 1998). The court rejected efforts to constitutionalize tactical decisions made during dangerous law enforcement encounters, reiterating that negligence and poor judgment do not give rise to Fourteenth Amendment liability. *Id.*

Under this authority, Plaintiff's substantive due process claim against Cadiz fails as a matter of law. The undisputed record establishes that Cadiz executed a PIT

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
ORANGE COUNTY

19

Case No. 2:24-CV-07692-DMG-JC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

maneuver for the legitimate purpose of terminating a dangerous vehicular pursuit, with no intent to harm Plaintiff. (Cadiz Decl. ¶¶ 3-14; Exh. 1.) There is no direct or circumstantial evidence that Cadiz acted with any intent to harm Plaintiff, the suspect, or anyone else, or that he acted for reasons unrelated to law enforcement. To the contrary, his conduct was undertaken precisely to stop a fleeing suspect and reduce the ongoing danger posed by the pursuit. (Cadiz Decl. ¶¶ 3-14; Exh. 1.) Plaintiff's arguments that the PIT maneuver was ill-timed, insufficiently cautious, or posed foreseeable risks sound in *negligence*, but the Ninth Circuit has made clear that such allegations are constitutionally irrelevant. *Onossian*, 175 F.3d at 1172. Even recklessness does not satisfy the conscience-shocking standard in pursuit cases. *Lewis*, 523 U.S. at 848-849.

Based on this law, Officer Cadiz is entitled to summary judgment on Plaintiff's substantive due process claim.

**V.    CONCLUSION**

For all these reasons, Defendants are entitled to summary judgment in this matter on all of Plaintiff's claims in the FAC.


Dated: January 9, 2026                    BURKE, WILLIAMS & SORENSEN, LLP


By: _____
        Mark J. Austin
        Attorneys for Defendants
        CITY OF TORRANCE and RYAN
        CADIZ

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
ORANGE COUNTY

20

Case No. 2:24-CV-07692-DMG-JC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants City of Torrance and Ryan Cadiz, certifies that this brief contains 6,784 words, which:

☒ complies with the word limit of L.R. 11-6.1.

☐ complies with the word limit set by court order dated _____.

DATED: January 9, 2026

_____

Mark J. Austin

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
ORANGE COUNTY

1

Case No. 2:24-CV-07692-DMG-JC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

## PROOF OF SERVICE

### *Salazar v. City of Torrance, et al.*
### Case No. 2:24-cv-07692-GW-JC

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

      At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Orange, State of California.  My business address is 18300 Von Karman Avenue, Suite 650, Irvine, CA 92612-1032.

      On January 9, 2026, I served true copies of the following document(s) described as **DEFENDANTS CITY OF TORRANCE AND RYAN CADIZ'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** on the interested parties in this action as follows:

### SEE ATTACHED SERVICE LIST

      **BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent from e-mail address lyarvis@bwslaw.com to the persons at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

      **BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

      Executed on January 9, 2026, at Irvine, California.

_____
Linda Yarvis  / Bernadette C. Antle

Burke, Williams & Sorensen, LLP
Attorneys at Law
Orange County

1

Case No. 2:24-CV-07692-DMG-JC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SERVICE LIST**
**Salazar v. City of Torrance, et al.**
**Case No. 2:24-cv-07692-GW-JC**

Dale K. Galipo
LAW OFFICES OF DALE
K. GALIPO

*Attorneys for Plaintiff*
*Maria Salazar*

dalekgalipo@yahoo.com
ldeleon@galipolaw.com
cmayne@galipolaw.com
dgilbert@galipolaw.com

amonguia@galipolaw.com,
coopermayne@recap.email
hlee@galipolaw.com,
msincich@galipolaw.com
rvalentine@galipolaw.com
sanderson@galipolaw.com
slaurel@galipolaw.com

Christian Cardona
CARDONA LAW FIRM
APC

*Attorneys for Plaintiff*
*Maria Salazar*

Christian@Cardonafirm.com

Richard T. Copeland

rtc@conflict-solution.com

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Orange County

2

Case No. 2:24-CV-07692-DMG-JC
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT