Mark J. Austin (SBN 208880)
maustin@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
18300 Von Karman Avenue, Suite 650
Irvine, California 92612-1032
Tel: 949.863.3363  Fax: 949.863.3350

Attorneys for Defendants
CITY OF TORRANCE and RYAN CADIZ

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MARIA SALAZAR,<br><br>            Plaintiff,<br><br>     v.<br><br>CITY OF TORRANCE, RYAN CADIZ, AND JOHN ESCARENO JR.,<br><br>            Defendants. | Case No. 2:24-CV-07692-DMG-JC<br><br>Judge: Hon. Dolly M. Gee<br>Dept.: 8C<br><br>**DECLARATION OF OFFICER RYAN CADIZ IN SUPPORT OF DEFENDANTS CITY OF TORRANCE AND RYAN CADIZ'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[FRCP 56]**<br><br>**Hearing:**<br>Date: February 6, 2026<br>Time: 2:00 p.m.<br>Dept.: 8C |

## DECLARATION OF OFFICER RYAN CADIZ

I, Ryan Cadiz, declare as follows:

1. I have personal knowledge of the facts set forth in this declaration, and, if called as a witness in this matter, I could and would testify competently thereto under oath.

2. I am currently employed as a police officer with the City of Torrance Police Department ("TPD"). I have held that position since May of 2022.

3. Submitted herewith as **Exhibit 1** is a true and correct copy of video footage of the incident at issue in this case that occurred on January 11, 2024. That footage was taken from the dashboard camera ("daschcam") on my police vehicle during the incident. References in this declaration to video timestamps refer to this dashcam video.

4. On January 11, 2024, I was patrolling near the Del Amo Fashion Center in Torrance, when I received a radio report from the Los Angeles Sheriff's Department air support that it was in pursuit of a vehicle that had been carjacked from the Walmart parking lot at 190th Street and Normandie Avenue. The report advised that the suspect's car had pulled into the parking structure near Carson Street and Del Amo Circle East, where I was patrolling. In response, I began to canvass the area, at which point I heard over the radio that the carjacked vehicle had been located, without any occupants, by Officer Ricky Lopez, also with the TPD.

5. Shortly thereafter, I and other officers in the area received a radio communication that the same suspect (later identified as John Escareno ("Escareno")) had stolen a different vehicle—a silver Toyota Prius—and was located near the entrance to the food court of the Del Amo Fashion Center. In response, I drove southbound on Del Amo Circle, approaching Carson Street, and observed the stolen vehicle driving eastbound on Carson, in the right-hand-turn lane, stopped at a red light, as though it was going to turn right.

6. Fearing that Escareno may attempt to flee again, I attempted to "box

Burke, Williams & Sorensen, LLP
Attorneys at Law
Orange County

2

Case No. 2:24-CV-07692-DMG-JC
DECL. OF RYAN CADIZ ISO DEFS' MOTION
FOR SUMMARY JUDGMENT

in" the Prius with my patrol vehicle, but Escareno was able to drive around me and continue eastbound on Carson Street. (Exh. 1 at 0:01:25 – 0:01:43.) At that point, Officer Dennis Gonsalves, also of the TPD and riding a police motorcycle, initiated a pursuit of the Prius. I then joined the pursuit. (Exh. 1 at 0:01:43 – 0:01:55.) During the entirety of the pursuit that followed, my vehicle was "Code 3," meaning its lights and sirens were activated.

7. The pursuit began eastbound on Carson Street, then turned southbound onto Crenshaw Boulevard, then later turned eastbound onto Sepulveda Boulevard. (Exh. 1 at 00:02:32 – 00:02:38.) During that phase of the pursuit, Officer Gonsalves acted as the primary unit, and I acted as the secondary unit. However, when the pursuit reached Sepulveda Boulevard and Cabrillo Avenue, by order of the supervising sergeant, Officer Gonsalves relinquished primary responsibility for the pursuit, and I took over as the primary unit. (Exh. 1, 00:03:41 – 00:03:58.)

8. In total, the pursuit continued for approximately four minutes. (Exh. 1 at 0:01:43 – 0:05:26.) During that time, Escareno often drove at speeds of approximately 80-90 miles per hour, through congested areas with multiple other cars, including near residential neighborhoods and busy shopping centers. In addition, in multiple instances, to avoid the traffic ahead of him, Escareno entered the wrong side of the street, driving directly against the flow of traffic. (Exh. 1 at 0:03:58 – 0:04:17 and 0:04:43 – 0:05:10.) Moreover, Escareno ran multiple red lights, speeding through intersections despite the chance of collision with the cars going through them. (Exh. 1 at 0:03:07 – 0:03:15 (turning against oncoming traffic), 0:03:34 – 0:03:43, 0:03:47 – 0:03:55, and 0:03:58 – 0:04:17.) In one instance, Escareno drove approximately 80 miles per hour on the wrong side of the road and ran a red light through an intersection. (Exh. 1 at 0:03:58 – 0:04:17.)

9. Towards the end of the pursuit, while Escareno was driving on the wrong side of the road on Sepulveda, he suddenly turned back onto the correct side of the road and slowed down, directly in front of me, at which point I also slowed

Burke, Williams & Sorensen, LLP
Attorneys at Law
Orange County

3

Case No. 2:24-CV-07692-DMG-JC
DECL. OF RYAN CADIZ ISO DEFS' MOTION
FOR SUMMARY JUDGMENT

1  down and hit the rear of his vehicle. (Exh. 1 at 0:04:43 – 0:05:10.) Nevertheless,
2  Escareno continued fleeing. (Exh. 1 at 0:05:08 – 0:05:20.) In fact, he then cut to the
3  right, across all lanes of traffic, and drove onto the sidewalk, colliding with various
4  obstacles before returning to the street. (Exh. 1 at 0:05:08 – 0:05:20.)

5      10.    Escareno then entered the intersection on Sepulveda Boulevard and
6  Vermont Avenue, and began to slow down, as if trying to decide which direction to
7  continue. (Exh. 1 at 0:05:16 – 0:05:20.) In response, as I approached the
8  intersection, I slowed down as well. At this time, because of how dangerous the
9  pursuit had been to the public due to Escareno's erratic and illegal tactics, and
10 would continue to be if the suspect were able to regain his speed and flee again, I
11 made the decision to perform a PIT maneuver on Escareno's vehicle to stop him
12 from fleeing further. In making this decision, I believed that (a) the dangers of a
13 further pursuit outweighed the risks of such a maneuver to the suspect, the officers,
14 or the public, and (b) that such a maneuver would end the pursuit.

15     11.    The term "PIT" stands for "Pursuit Intervention Technique," and is a
16 low-speed maneuver (35 miles per hour or less under the TPD's vehicular-pursuit
17 training), in which an officer's vehicle makes contact with the suspect's vehicle at a
18 certain angle, causing the suspect's vehicle to spin to a stop.

19     12.    As shown in the accompanying dashcam video, I executed the PIT
20 maneuver by making contact with the rear side of Escareno's vehicle, causing it to
21 spin to a stop. (Exh. 1 at 0:05:16 – 0:05:26.) At the time I made contact, both my
22 vehicle and Escareno's vehicle were traveling at less than 35 miles per hour, per the
23 training of the TPD on PIT maneuvers. Moreover, in my understanding, according
24 to a review of the incident by command staff at the TPD, the execution of the PIT
25 maneuver was entirely within TPD policy.

26     13.    However, after I entered the intersection, and shortly before I made
27 contact with Escareno's vehicle, I saw a pedestrian—Plaintiff Salazar—in the
28 vicinity. As a result, I immediately applied the brakes of my vehicle and attempted

Burke, Williams & Sorensen, LLP
Attorneys at Law
Orange County

4

Case No. 2:24-CV-07692-DMG-JC
DECL. OF RYAN CADIZ ISO DEFS' MOTION
FOR SUMMARY JUDGMENT

to disengage from the PIT maneuver to avoid any potential impact to her, but I was unable to stop my car from making contact with Escareno's vehicle. As it spun out from the PIT maneuver, Escareno's vehicle struck Ms. Salazar, which I did not intend in executing the PIT maneuver. (Exh. 1 at 0:05:16 – 0:05:26.) I had no intend to harm or contact Plaintiff whatsoever—only to stop Escareno's vehicle.

14. After the collision, Ms. Salazar was approached and evaluated by emergency personnel, including myself, other officers, and paramedics. (Exh. 1 at 0:05:36 – 0:18:20.) She remained standing of her own volition during this time, and later walked to the ambulance without assistance, while still carrying the bags she had with her at the time of the incident. (Exh. 1 at 0:18:20 – 0:18:54.) My only intent in executing the maneuver was to stop Escareno's vehicle.

15. After the vehicular pursuit, Escareno fled on foot, and was soon thereafter apprehended by the TPD at a local Carl's Jr. restaurant.

16. The TPD maintains a written policy pertaining to vehicular pursuits, a copy of which—as it existed at the time of the incident—is submitted herewith as **Exhibit 2** (the "Pursuit Policy"). The Pursuit Policy covers multiple subjects relating to vehicular pursuits, including PIT maneuvers. (Exh. 2, § 307.6.)

17. It is my understanding that the TPD provides annual training on its Pursuit Policy, including on PIT maneuvers, to all officers of the TPD, as required by the California Vehicle Code. I have received this training on the Pursuit Policy every year that I have been an officer the TPD, including but not limited to in November of 2023. Each of these training sessions discussed the requirements and policies on PIT maneuvers, as well as the other topics that I understand are required by the Vehicle Code and Penal Code. The training provided on the Pursuit Policy each year covers every section and topic in the Pursuit Policy and California law.

18. Whenever I receive training on the Pursuit Policy, I am required by the TPD to certify in writing that I have received, read, and understand the policy. Attached hereto as **Exhibit 3** is a true and correct copy of the attestation I signed in

Burke, Williams & Sorensen, LLP
Attorneys at Law
Orange County

5

Case No. 2:24-CV-07692-DMG-JC
DECL. OF RYAN CADIZ ISO DEFS' MOTION
FOR SUMMARY JUDGMENT

November of 2023, stating that I had completed the training requirements relating to the Pursuit Policy and other related policies at that time, and that I read and understood those policies, including the Pursuit Policy.

19. I understand that the TPD conducted an internal review of the pursuit in this case and determined that it was within TPD policy.

20. The TPD's Pursuit Policy does not require an officer to obtain supervisor approval before executing a PIT maneuver. The policy states that supervisor approval should obtained "whenever practicable" (Exh. 2, § 307.6) and generally uses the term "should" on this issue (Exh. 2, § 307.6.2). This language contemplates (and officers are so informed) that it will not always be possible for an officer to obtain supervisor approval before executing a PIT maneuver, particularly in emergency situations such as this one. Thus, although officers are taught that approval should be obtained where practicable, the policy does not require it.

21. Furthermore, officers of the TPD are taught during the training course on PIT maneuvers that they should be executed only at speeds of 35 miles per hour or less. Although this is not stated in writing in the Pursuit Policy, it is taught as part of the TPD's training course on the policy. I was in compliance with this requirement when I executed the PIT maneuver in this case.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Executed on this __08__ day of January, 2026, at Torrance, California.

_____
Ryan Cadiz

Burke, Williams & Sorensen, LLP
Attorneys at Law
Orange County

6

Case No. 2:24-CV-07692-DMG-JC
DECL. OF RYAN CADIZ ISO DEFS' MOTION
FOR SUMMARY JUDGMENT

# EXHIBIT 3

**EXHIBIT 3**

# Torrance Police Department
## SB 719 Pursuit Training Update Attestation

## 2023

| Employee I.D. # | 22438 | | |
|---|---|---|---|
| Name - Last: Cadiz | | First: Ryan | Middle Initial: J |
| Training Date: 11/01/23 | | | |

### Attestation

Pursuant to California Vehicle Code 17004.7(b)(2), and in completion with the training requirements of PC 13519.8 and SB 719, I have read and understand my agency's Vehicle Pursuit Policy, Code 3 Policy and have reviewed the EVOC Training documents distributed by EVOC Instructors.

Signature: [signed]   Date: 11/01/23

- A signed copy of this attestation shall be returned to the Professional Standards Division for Training Records.

[Attestation Form - Pursuit 2023]

**EXHIBIT 3**
**- 8 -**

# PROOF OF SERVICE

*Salazar v. City of Torrance, et al.*
Case No. 2:24-cv-07692-GW-JC

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Orange, State of California. My business address is 18300 Von Karman Avenue, Suite 650, Irvine, CA 92612-1032.

On January 9, 2026, I served true copies of the following document(s) described as **DECLARATION OF OFFICER RYAN CADIZ IN SUPPORT OF DEFENDANTS CITY OF TORRANCE AND RYAN CADIZ'S MOTION FOR SUMMARY JUDGMENT** on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address lyarvis@bwslaw.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 9, 2026, at Irvine, California.

Linda Yarvis / Bernadette C. Antle

**SERVICE LIST**
**Salazar v. City of Torrance, et al.**
**Case No. 2:24-cv-07692-GW-JC**

| | |
|---|---|
| Dale K. Galipo<br>LAW OFFICES OF DALE K. GALIPO<br><br>*Attorneys for Plaintiff Maria Salazar* | dalekgalipo@yahoo.com<br>ldeleon@galipolaw.com<br>cmayne@galipolaw.com<br>dgilbert@galipolaw.com<br><br>amonguia@galipolaw.com,<br>coopermayne@recap.email<br>hlee@galipolaw.com,<br>msincich@galipolaw.com<br>rvalentine@galipolaw.com<br>sanderson@galipolaw.com<br>slaurel@galipolaw.com |
| Christian Cardona<br>CARDONA LAW FIRM APC<br><br>*Attorneys for Plaintiff Maria Salazar* | Christian@Cardonafirm.com |
| Richard T. Copeland | rtc@conflict-solution.com |