1  **LAW OFFICES OF DALE K. GALIPO**
   Dale K. Galipo (SBN 144074)
2  dalekgalipo@yahoo.com
   Cooper Alison-Mayne (SBN 343169)
3  cmayne@galipolaw.com
   21800 Burbank Boulevard, Suite 310
4  Woodland Hills, CA 91367
   Phone: (818) 347-3333
5

6  *Attorneys for Plaintiff*

7

8              **UNITED STATES DISTRICT COURT**

9             **CENTRAL DISTRICT OF CALIFORNIA**

10

11 MARIA SALAZAR,                    Case No.: 2:24-CV-07692-DMG-JC

                                     Judge Gee
12              Plaintiff,
                                     **PLAINTIFF'S OPPOSITION TO**
13      vs.                          **DEFENDANTS' MOTION FOR**
                                     **SUMMARY JUDGMENT**
14 CITY OF TORRANCE; RYAN
   CADIZ; JOHN ESCARENO JR.,
15
                Defendants.         Date:   February 6, 2026
16                                   Time:   2:00 p.m.
                                     Crtrm:  8C
17

18

19

20

21

22

23

24

25

26

27

28



1

**TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................... 7

II.   LEGAL STANDARD ............................................................................... 7

III.  FACTUAL BACKGROUND .................................................................... 8

    A.    The Vehicle Pursuit .................................................................... 8

    B.    First Collision ............................................................................ 9

    C.    Second Collision ........................................................................ 9

    D.    Plaintiff Was Clearly Visible in the Crosswalk ....................... 10

    E.    Cadiz's Actions Did Not Constitute a Proper PIT Maneuver ... 10

IV.   ARGUMENT ......................................................................................... 11

    A.    The City Is Not Immune Under Vehicle Code § 17004.7 ......... 11

        1.    Defendants Have Not Met Their Burden to Show Compliance with the Training and Certification Requirements ................................................................... 11

        2.    Section 17004.7 Does Not Apply Because the Suspect Was Not Operating His Vehicle ............................... 14

    B.    Plaintiff Concedes Officer Cadiz Is Immune from Negligence Liability Under Vehicle Code Section 17004 ..................................... 15

    C.    Plaintiff Has Identified Statutory Basis for City Liability ................. 15

    D.    Defendants' Motion on the Federal Claims Should Be Denied at the Threshold for Failure to Identify Material Undisputed Facts ............. 16

        1.    Fourth Amendment: Defendants Offer Only Two Facts— Both Disputed, Both Irrelevant .................................. 16

        2.    Fourteenth Amendment: Defendants Present Only Two Facts—One Disputed, One a Legal Conclusion ...................... 17

        3.    The Court Is Not Obligated to Construct Defendants' Case for Them ................................................................ 18

    E.    Plaintiff's Fourth Amendment Claim Should Survive ...................... 19

F.   Plaintiff's Due Process Claim Should Survive ...................................23

1.   The Deliberate Indifference Standard Applies Because Officer Cadiz Had Time to Deliberate .....................................24

2.   Officer Cadiz Acted with Deliberate Indifference ...................26

3.   Alternatively, Cadiz Acted with Purpose-to-Harm ..................26

G.   Issues Not Raised by Defendants Are Waived ...................................28

V.   CONCLUSION .............................................................................................28

1

# TABLE OF AUTHORITIES

2

## Cases

3

*Adickes v. S.H. Kress & Co.*

4

   398 U.S. 144 (1970) ............................................................................... 8

5

*Anderson v. Liberty Lobby, Inc.*

6

   477 U.S. 242 (1986) ............................................................................... 8

7

*Brendlin v. California*

8

   551 U.S. 249 (2007) ........................................................................ 19, 22

9

*Brower v. County of Inyo*

10

   489 U.S. 593 (1989) ........................................................................ 19, 22

11

*Celotex Corp. v. Catrett*

12

   477 U.S. 317 (1986) ............................................................................... 8

13

*Checki v. Webb*

14

   785 F.2d 534 (5th Cir. 1986) ............................................................... 24

15

*Chilcote v. San Bernardino County*

   218 Cal. 444 (1933) .............................................................................. 14

16

*Claybrook v. Birchwell*

17

   199 F.3d 350 (6th Cir. 2000) ............................................................... 22

18

*County of Sacramento v. Lewis*

19

   523 U.S. 833 (1998) ..................................................................... passim

20

*Craighead v. Lee*

21

   399 F.3d 954 (8th Cir. 2005) ......................................................... 22, 23

22

*Est. of Soakai v. Abdelaziz*

23

   137 F.4th 969 (9th Cir. 2025) ........................................................ 26, 27

24

*Flores v. City of San Diego*

25

   83 Cal. App. 5th (2022) ....................................................................... 12

26

*Gangstee v. Cnty. of Sacramento*

27

   2012 WL 112650 (E.D. Cal. Jan. 12, 2012) ........................................ 21

28

*Garcia v. City of Sacramento*
   2010 WL 3521954 (E.D. Cal. Sept. 8, 2010).................................................21, 22

*Graves v. Arpaio*
   623 F.3d 1043 (9th Cir. 2010)................................................................................28

*Hayes v. Cnty. of San Diego*
   736 F.3d 1223 (9th Cir. 2013)................................................................................23

*Hopkins v. Andaya*
   958 F.2d 881 (9th Cir. 1992)...................................................................................8

*Johnson v. City of Shelby*
   574 U.S. 10 (2014)..................................................................................................16

*Nelson v. City of Davis*
   685 F.3d 867 (9th Cir. 2012)......................................................................20, 21, 22

*Nicholson v. City of Los Angeles*
   935 F.3d 685 (9th Cir. 2019)..................................................................................26

*Onossian v. Block*
   175 F.3d 1169 (9th Cir. 1999)......................................................................25, 26, 27

*Patel v. Kent Sch. Dist.*,
   648 F.3d 965 (9th Cir. 2011)..................................................................................26

*Porter v. Osborn*
   546 F.3d 1131 (9th Cir. 2008)................................................................................23

*Ramirez v. City of Gardena*
   14 Cal. App. 5th 811 (2017)......................................................................11, 13, 15

*Rodriguez v. City of Fresno*
   819 F. Supp. 2d 937 (E.D. Cal. 2011)..............................................................21, 23

*Rodriguez v. Cnty. of Los Angeles*
   654 F. Supp. 3d 1029 (C.D. Cal. 2023) ................................................................21

*Tennison v. City and Cnty. of San Francisco*
   570 F.3d 1078 (9th Cir. 2009)................................................................................23

*Terry v. Ohio*
   392 U.S. 1 (1968) ...................................................................................................19

*Vathekan v. Prince George's Cty.*
   154 F.3d 173 (4th Cir. 1998)................................................................................21
*Villanueva v. California*
   986 F.3d 1158 (9th Cir. 2021)......................................................................20, 22
*Wilkinson v. Torres*
   610 F.3d 546 (9th Cir. 2010)...............................................................................23
*Zamani v. Carnes*
   491 F.3d 990 (9th Cir. 2007)...............................................................................28

**Statutes**

California Vehicle Code § 17004.7 ....................................................................passim
California Vehicle Code § 17001 ...............................................................................15

**Rules**

Federal Rule of Civil Procedure 56 ..........................................................7, 12,19
Local Rules 11-6.1...................................................................................................29
Local Rules 56-1 .....................................................................................................18
Local Rules 56-4 .....................................................................................................18

LAW OFFICES OF
**DALE K. GALIPO**
CIVIL RIGHTS ATTORNEYS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On January 11, 2024, Torrance Police Officer Ryan Cadiz had been pursuing John Escareno at high speeds for four minutes when Escareno slowed down, nearly stopped, and opened his car door. Rather than allowing the pursuit to end, Cadiz accelerated to 32 miles per hour and rammed Escareno from behind, sending his vehicle careening into a crosswalk. Plaintiff Maria Salazar, a 67-year-old woman, was standing in that crosswalk, in plain view, crossing on a green light. She sustained serious injuries as a result of Cadiz's reckless decision. Cadiz characterizes what he did as a "PIT maneuver"—a technique that is never supposed to be used on slow-moving or stopped vehicles. The City's own pursuit expert testified that using a PIT on a stopped vehicle would be like "us[ing] a piece of bread to nail in a nail. It just doesn't make any logical sense."

Defendants move for summary judgment on Plaintiff's state law claims based on their affirmative defense under California Vehicle Code § 17004.7, but they fail to meet their burden to show that they are entitled to immunity as a matter of law. They also argue that they are entitled to judgment as a matter of law on Plaintiff's Fourth and Fourteenth Amendment claims, but taking the facts in the light most favorable to Plaintiff, a reasonable jury could find that Officer Cadiz's deliberate decision to ram a nearly stopped vehicle—while a pedestrian stood visible in the crosswalk directly ahead—constituted both a seizure under the Fourth Amendment and conscience-shocking conduct under the Fourteenth Amendment. Therefore, the motion should be denied.

## II.    LEGAL STANDARD

Summary judgment is only appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The burden of establishing the absence of a genuine issue of material fact lies with the moving party. *See Celotex Corp. v. Catrett*, 477 U.S.

1   317, 322–23 (1986). At summary judgment, a court's function is not to weigh the

2   evidence, make credibility determinations, or determine the truth but to determine

3   whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477

4   U.S. 242, 249 (1986). In ruling on summary judgment, the Court must view the

5   evidence and draw all reasonable inferences therefrom in the light most favorable

6   to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59

7   (1970). A fact is "material" if its proof or disproof is essential to an element of the

8   plaintiff's case. *Celotex*, 477 U.S. at 322–23. A factual dispute is "genuine" "if the

9   evidence is such that a reasonable jury could return a verdict for the nonmoving

10  party." *Id.* at 248. Even entirely circumstantial evidence is sufficient to create a

11  triable issue of fact. *Hopkins v. Andaya*, 958 F.2d 881, 888 (9th Cir. 1992).

12  **III.    FACTUAL BACKGROUND**

13      **A.    The Vehicle Pursuit**

14         On January 11, 2024, Officer Ryan Cadiz was patrolling near the Del Amo

15  Fashion Center in Torrance when he received a radio report that the Los Angeles

16  Sheriff's Department was pursuing a carjacked vehicle that had pulled into a

17  nearby parking structure. Plaintiff's Statement of Additional Material Facts

18  ("PAMF") 1. Shortly thereafter, officers learned that the same individual, later

19  identified as John Escareno, had stolen a second vehicle—a silver Toyota Prius—

20  and was located near the Del Amo Fashion Center food court. PAMF 2. Cadiz

21  attempted to "box in" the Prius, but Escareno drove around him and continued

22  eastbound on Carson Street. PAMF 4.

23         A vehicle pursuit ensued, with Officer Dennis Gonsalves on a police

24  motorcycle initially serving as the primary unit and Cadiz as the secondary unit.

25  PAMF 5. Cadiz later assumed primary responsibility for the pursuit. PAMF 6. The

26  pursuit lasted approximately four minutes and covered multiple streets, including

27  Carson Street, Crenshaw Boulevard, and Sepulveda Boulevard. PAMF 7. For

28

LAW OFFICES OF
DALE K. GALIPO
CIVIL RIGHTS ATTORNEYS

portions of the pursuit, Cadiz did not have his sirens on, even though he was running through red lights at high speeds. PAMF 3.

### B.    First Collision

Toward the end of the pursuit, while driving on the wrong side of Sepulveda Boulevard, Escareno suddenly turned back into the correct lane and slowed down directly in front of Cadiz. PAMF 8. Rather than slowing down, Cadiz rammed Escareno's vehicle from behind, sending it careening towards the other cars at the busy intersection of Sepulveda Boulevard and Vermont Avenue. PAMF 9. Cadiz claims this first strike was an accident caused by his brakes going out. PAMF 10.

Escareno then drove up onto the sidewalk to maneuver around the cars that were stopped in front of him, and Cadiz turned to follow Escareno's path on the sidewalk. PAMF 11, 12. At this point, Cadiz reduced his speed to approximately 5–10 miles per hour. PAMF 14. Escareno then entered the intersection of Sepulveda Boulevard and Vermont Avenue, began to slow down, almost came to a stop, and opened his door. PAMF 13, 17.

### C.    Second Collision

Cadiz decided to ram Escareno's vehicle after he saw it slow down and "almost stop." PAMF 15. At the time Cadiz made this decision, Escareno's vehicle was traveling only 2 to 5 miles per hour. PAMF 16. Cadiz says he thought his brakes were not functioning. PAMF 22. Nevertheless, after deciding to ram Escareno's vehicle, Cadiz accelerated from 5–10 miles per hour to 32 miles per hour. PAMF 19, 20. Based on the video evidence, a reasonable jury could find that Cadiz decided to ram Escareno's vehicle approximately five seconds before the collision, just prior to when he can be seen accelerating toward the vehicle. PAMF 21.

Cadiz did not attempt to turn to avoid the collision, even though his vehicle was capable of turning. PAMF 23, 24, 25. His vehicle was also capable of rapidly braking after he accelerated, as demonstrated by his earlier maneuvers during the

1 pursuit, but he chose not to brake in time to prevent the collision. PAMF 26.

2 Officer Cadiz's vehicle collides with Escareno's, causing Escareno to completely

3 lose control of the car and sending it careening into the crosswalk where it strikes

4 Plaintiff. PAMF 27.

5       **D.    Plaintiff Was Clearly Visible in the Crosswalk**

6       Plaintiff, who was 67 years old at the time, was crossing the street as a

7 pedestrian in the crosswalk on a green light. PAMF 28, 34. Cadiz was familiar with

8 the intersection where the collision occurred and knew that it had crosswalks.

9 PAMF 29. Cadiz testified that he was looking at the marked crosswalk "the entire

10 time" from when he got up to the curb to the time of the collision. PAMF 30.

11 Based on the video, Plaintiff would have first been visible in the marked crosswalk

12 nine seconds before the collision, and from six seconds before the collision through

13 the moment of impact, Plaintiff is clearly visible in the crosswalk. PAMF 31, 34.

14 In his initial statement, Cadiz admitted that he saw Plaintiff "[a]s he closed the

15 distance with the vehicle." PAMF 32. Although Cadiz now claims to have only

16 seen Plaintiff at the last minute, a reasonable jury could find that based on his

17 statements and the video, he actually saw her much earlier, prior to deciding to ram

18 Escareno's vehicle. PAMF 43.

19       Cadiz himself acknowledged that, under these circumstances, it would not

20 be appropriate to ram a vehicle if a pedestrian were in the crosswalk because of the

21 danger that the rammed vehicle could spin out and there would be "no chance of

22 them not getting hurt." PAMF 33.

23       **E.    Cadiz's Actions Did Not Constitute a Proper PIT Maneuver**

24       A PIT maneuver involves four steps: (1) the officer must match the speed of

25 the target vehicle; (2) the officer must make gentle contact with the rear quarter

26 panel of the target vehicle; (3) the officer implements approximately a quarter turn

27 of steering into the target vehicle to induce rotation; and (4) the officer continues

28 around the rotating target vehicle to a safe location. PAMF 37. Once a car rotates

LAW OFFICES OF
**DALE K. GALIPO**
CIVIL RIGHTS ATTORNEYS

1   27 degrees during a PIT maneuver, the laws of physics create an "unrecoverable

2   skid," at which point "the driver of the target vehicle is no longer in control" of the

3   vehicle. PAMF 35, 36.

4   　　Critically, officers are trained to execute PIT maneuvers on vehicles

5   traveling a minimum speed of 15 miles per hour because there is a lower-limit

6   issue with conducting the maneuver on slower vehicles. PAMF 38. A PIT

7   maneuver is not an appropriate tool for a stopped vehicle, and officers are not

8   trained to conduct a PIT maneuver on a stopped vehicle. PAMF 39, 40. Cadiz's

9   actions here did not constitute a proper PIT maneuver because they did not follow

10   any of the four required steps. PAMF 41. Regardless, the City's own pursuit expert

11   testified that using a PIT on a stopped vehicle would be like "us[ing] a piece of

12   bread to nail in a nail. It just doesn't make any logical sense." PAMF 38.

13   **IV.   ARGUMENT**

14   　　**A.   The City Is Not Immune Under Vehicle Code § 17004.7**

15   　　　　1.   <u>Defendants Have Not Met Their Burden to Show Compliance</u>

16   　　　　　　<u>with the Training and Certification Requirements</u>

17   　　Immunity under Vehicle Code § 17004.7 is an affirmative defense; on a

18   motion for summary judgment, the moving party bears the initial burden of

19   showing that the defense applies. *Ramirez v. City of Gardena*, 14 Cal. App. 5th

20   811, 817 (2017).

21   　　To establish immunity under § 17004.7, a public agency must prove that it

22   (1) adopted and promulgated a written policy on vehicular pursuits that meets the

23   minimum standards set forth in the statute, (2) requires "all peace officers of the

24   public agency [to] certify in writing that they have received, read, and understand

25   the policy," and (3) "provides regular and periodic training on an annual basis" that

26   covers "each of the subjects and elements set forth" in the statute and complies

27   "with the training guidelines established pursuant to Section 13519.8 of the Penal

28   Code." Cal. Veh. Code § 17004.7(b), (d). Plaintiff does not dispute that the City's

11

written Pursuit Policy facially complies with the statute. However, Defendants
have failed to produce competent evidence establishing either the annual training
requirement or the written certification requirement.

Defendants' evidence of compliance with § 17004.7 consists entirely of
conclusory declarations and a single officer's attestation form from November
2023. Defendants have produced no training records, attendance logs, curricula, or
lesson plans demonstrating annual training for all officers that covers "each of the
subjects and elements set forth in" the statute as required by § 17004.7(d). The
declarations submitted are legally insufficient because they consist of inadmissible
conclusions rather than facts that would be admissible in evidence. *See* Fed. R.
Civ. P. 56(c)(4). Sergeant Guell's declaration that annual training covers all
required topics is an unsupported legal conclusion. Similarly, Officer Cadiz states
only that "[i]t is my understanding that the TPD provides annual training." (ECF
No. 48, Cadiz Decl. ¶ 17.)

Defendants' evidentiary failures extend to § 17004.7(d) training duration
requirement that annual training "comply, at a minimum, with the training
guidelines established pursuant to Section 13519.8 of the Penal Code." The
California Court of Appeal in *Flores v. City of San Diego*, 83 Cal. App. 5th 360
(2022), held that this language incorporates the training standards promulgated by
the POST Commission in Regulation 1081, including the requirement that vehicle
pursuit training be a minimum of one hour per year. *Id*. at 381–91. The court held
that "the one-hour annual minimum time standard set out in Regulation 1081
applies to agencies seeking immunity pursuant to section 17004.7." *Id*. at 391.
**Thus, to obtain immunity, "the City must present undisputed facts
demonstrating that its vehicle pursuit policy training was at least one hour in
duration in the training year prior to the incident."** *Id*. at 392. In *Flores*, the
court reversed summary judgment which had been granted despite the city "offered

1   no evidence that its vehicle pursuit policy training included anything beyond the
2   mere screening of the 25 minute, 50 second video." *Id.*

3          Here, Defendants have fared even worse—they have submitted no evidence
4   whatsoever regarding the duration of the TPD's vehicle pursuit training. There are
5   no training videos in evidence, no curricula showing time allocations, and no
6   declarations attesting to the length of training sessions. "In the absence of evidence
7   to support a determination, as a matter of law, that the City's vehicle pursuit
8   training met the one-hour annual minimum standard set out in Regulation 1081, the
9   City cannot demonstrate that it met the 'annual training' prong of section
10  17004.7." *Id.*

11         Defendants have likewise failed to establish compliance with the written
12  certification requirement of section 17004.7(b)(2), which requires that "all peace
13  officers of the public agency certify in writing that they have received, read, and
14  understand the policy." Defendants have produced only a single attestation form
15  signed by Officer Cadiz in November 2023. (Defendants' Exhibit 3.) While the
16  statute does not demand perfect compliance, a public agency must still produce
17  evidence demonstrating substantial compliance with the certification requirement.
18  In *Ramirez v. City of Gardena*, 5 Cal. 5th 995, 998 (2018), for example, the Court
19  found substantial compliance where the city produced written certifications from
20  64 officers attesting they had received, read, and understood the pursuit policy.
21  Here, by contrast, Defendants have produced certifications from only *one officer*.
22  Given that TPD employs approximately 225 officers, **Defendants have**
23  **demonstrated a compliance rate of less than half of one percent.** They simply
24  have not met their burden to present sufficient facts to establish as a matter of law
25  that they have substantially complied with § 17004.7(b)(2)'s requirement that all
26  peace officers certify in writing their understanding of the pursuit policy.

27
28

1    Because Defendants have failed to submit sufficient competent evidence

2    establishing each element of their affirmative defense under § 17004.7, the motion

3    for summary judgment on this basis should be denied.

4            2.     <u>Section 17004.7 Does Not Apply Because the Suspect Was Not</u>

5                  <u>Operating His Vehicle</u>

6    Even if Defendants could establish compliance with the statute's training

7    and certification requirements, § 17004.7 immunity still does not apply because

8    Plaintiff's injury did not "result[] from the collision of a vehicle being operated by

9    an actual or suspected violator." § 17004.7(b)(1).

10    The video evidence shows that while Escareno still had control of his

11    vehicle, he was steering to the right in an effort to pass Plaintiff without striking

12    her. Plaintiff was injured only after Officer Cadiz deliberately rammed Escareno's

13    vehicle, causing it to spin completely out of Escareno's control. Cadiz admitted

14    that after being struck, Escareno's "car wasn't driving. It was spinning around."

15    PAMF 28. Further, Sergeant Guell explained that once a vehicle begins spinning

16    "the driver is no longer in control." PAMF 36–37. Plaintiff has presented sufficient

17    evidence that Escareno was not capable of operating his car when it struck and

18    injured Plaintiff and therefore Plaintiff's injury did not "result[] from the collision

19    of a vehicle being operated by" Escareno, and the immunity does not apply.

20    California law confirms that Escareno was no longer "operating" his vehicle

21    at the moment of impact. The California Supreme Court has held that a vehicle is

22    "in operation" only when it is "in a 'state of being at work' or 'in the active

23    exercise of some specific function' by performing work or producing effects at the

24    time and place the injury is inflicted." *Chilcote v. San Bernardino County*, 218 Cal.

25    444, 445 (1933). After Officer Cadiz rammed Escareno's car, Escareno could no

26    longer meaningfully steer, brake, or cause the vehicle to perform any of its

27    intended purposes as a vehicle. The movement of the vehicle at that point was no

28    longer the product of Escareno's operation, but the direct consequence of the force

14

1  applied by Officer Cadiz. Plaintiff's injury therefore resulted from Officer Cadiz's
2  conduct, not from Escareno's operation of his vehicle while fleeing.

3       Finally, the purpose of § 17004.7 supports this conclusion. The statute
4  reflects a deliberate policy balance: it immunizes public agencies from liability for
5  injuries caused by the reckless driving of fleeing suspects, while preserving
6  liability for injuries caused by the negligent driving of pursuing officers. This
7  balance ensures that departments and officers retain a proper incentive to drive
8  safely during pursuits, even when suspects do not. Applying immunity here would
9  undermine that purpose. Plaintiff's injury was not caused by Escareno's reckless
10 driving—it was caused by Officer Cadiz's deliberate decision to ram a vehicle into
11 an occupied crosswalk. Escareno's car was merely the mechanism of injury, no
12 different than if Officer Cadiz had slammed into a light pole during the pursuit and
13 sent it crashing into a pedestrian. No one would suggest § 17004.7 immunizes that
14 conduct, and it does not immunize this conduct either.

15 **B.      Plaintiff Concedes Officer Cadiz Is Immune from Negligence**
16 **Liability Under Vehicle Code Section 17004**

17      Vehicle Code § 17004 provides Officer Cadiz with personal immunity from
18 Plaintiff's state law claims in this case. Plaintiff abandoned those claims and
19 therefore that portion of the Motion is moot. As set forth below, this immunity
20 does not extend to the City.

21 **C.      Plaintiff Has Identified Statutory Basis for City Liability**

22      Vehicle Code § 17001 creates a statutory exception to public entities'
23 general tort immunity: "A public entity is liable for death or injury to person or
24 property proximately caused by a negligent or wrongful act or omission in the
25 operation of any motor vehicle by an employee of the public entity acting within
26 the scope of his employment." VEH § 17001; *see Ramirez* 5 Cal. 5th at 999, 422
27 P.3d at 1024.

28

While Plaintiff did not cite § 17001 by number in her complaint, federal pleading standards do not require citation to specific statutes—plaintiffs plead facts, not legal theories. *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014). Moreover, Defendants themselves recognized the statutory basis for Plaintiff's claims when they asserted §§ 17004 and 17004.7 as affirmative defenses in their Answer. (ECF No. 31 at 18.) Those defenses arise within the statutory scheme governing claims brought under § 17001. Defendants cannot claim ignorance of Plaintiff's statutory theory when their own Answer demonstrates they understood it perfectly.

### D.   Defendants' Motion on the Federal Claims Should Be Denied at the Threshold for Failure to Identify Material Undisputed Facts

Defendants bear the burden of identifying specific undisputed material facts that entitle them to judgment. *Celotex*, 477 U.S. at 323. They have not done so. Their Statement of Undisputed Facts contains only two facts related to their Fourth Amendment claim and two facts related to their Fourteenth Amendment claim. (ECF No. 47 at 4–5.) All four facts are disputed, but even if they were not, they would not support judgment in their favor. The Court should deny the Motion on this basis alone.

#### 1.   Fourth Amendment: Defendants Offer Only Two Facts—Both Disputed, Both Irrelevant

As a threshold matter, Defendants' motion should be denied because the undisputed facts they have identified—even if truly undisputed—cannot support summary judgment as a matter of law.

Defendants offer only two facts in support of their motion on this claim: (SUF 7) that Cadiz's actions were "directed solely at Defendant Escareno's vehicle" and "solely intended to stop that vehicle," and (SUF 8) that Plaintiff "was not a suspect in the pursuit and was not the intended object of any force." These facts are disputed—Plaintiff has presented evidence that Cadiz saw her in the

crosswalk before he accelerated and chose to ram Escareno's vehicle anyway. But even if undisputed, these facts would not entitle Defendants to summary judgment because Cadiz's subjective intentions are largely irrelevant to the Fourth Amendment analysis, and who his target may have been is not dispositive anyway. The Supreme Court and Ninth Circuit have repeatedly held that a person may be seized even when not the officer's primary target, so long as she is stopped by an instrumentality the officer intentionally deployed. *See* Section IV.E below.

Their two facts do not provide any basis for granting judgment as a matter of law in their favor. The Court should deny summary judgment on this basis alone. However, proceeding to the merits, the motion fails for the reasons set forth in Section IV.E.

> 2. <u>Fourteenth Amendment: Defendants Present Only Two Facts—One Disputed, One a Legal Conclusion</u>

As with the Fourth Amendment claim, Defendants' motion for summary judgment on Plaintiff's Fourteenth Amendment claim should be denied at the threshold because their undisputed facts are utterly insufficient.

Defendants offer only two facts: (SUF 9) that Cadiz's actions "were in no way intended by Cadiz to harm Plaintiff," and (SUF 10) that Cadiz's "conduct did not 'shock the conscience'" because TPD determined his conduct was "reasonable and within TPD's Pursuit Policy."

Fact 9 is disputed—Plaintiff has presented evidence from which a jury could conclude that Cadiz saw her in the crosswalk and consciously disregarded the known risk to her safety. But even if undisputed, Fact 9 would not entitle Defendants to judgment as a matter of law. See Section IV.F (in the Ninth Circuit, a bystander plaintiff asserting a Fourteenth Amendment claim need only show purpose to harm the *suspect*, not the plaintiff).

Fact 10 is not a fact at all—it is an inadmissible legal conclusion. The assertion that Cadiz's conduct "did not shock the conscience" is the ultimate legal

question for the jury, not a fact to which Defendants can assert as undisputed. Similarly, TPD's internal determination that Cadiz acted "reasonably" and "within policy" is irrelevant to the constitutional inquiry presented here. A police department's post-hoc blessing of its own officer's conduct has no bearing on whether that conduct violated the Fourteenth Amendment.

Defendants bear the burden of identifying undisputed material facts that entitle them to judgment. They have failed to do so, and their motion should be denied on this basis alone. However, even proceeding to the merits, the motion fails for the reasons discussed in Section IV.F.

### 3. The Court Is Not Obligated to Construct Defendants' Case for Them

Defendants appear to hope that the Court will look beyond their sparse Statement of Undisputed Facts, comb through their attached declarations, and construct a factual record of undisputed facts based on which the Court can apply the law. The Court should not do so.

The Local Rules require that the moving party submit a "Statement of Uncontroverted Facts" listing "the material facts as to which the moving party contends there is no genuine dispute." L.R. 56-1. "The Court is not obligated to look any further in the record for supporting evidence other than what is actually and specifically referenced in the Statement of Uncontroverted Facts, the Statement of Genuine Disputes, and the Response to Statement of Genuine Disputes." L.R. 56-4; *see also Forsberg v. Pacific Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) (district courts need not "search and sift the factual record" to locate evidence supporting a party's position).

This Court's Standing Order reinforces this principle: "No party shall submit evidence other than the specific items of evidence or testimony necessary to

18

support or controvert a proposed statement of undisputed fact." Standing Order § 5(d)(ii).

The burden on summary judgment lies with the moving party to identify "specific facts" demonstrating the absence of a genuine dispute. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323. This requirement exists for good reason: the Court is a neutral arbiter, not an advocate for either side. If Defendants believed there were undisputed facts that entitled them to summary judgment on Plaintiff's Fourth and Fourteenth Amendment claims, it was their obligation to identify those facts in their Statement of Undisputed Facts.

Defendants have identified a grand total of four "undisputed facts" to support summary judgment on two federal constitutional claims—and each of those facts is either genuinely disputed, legally irrelevant, or an inadmissible legal conclusion. The Motion fails to meet the most basic requirements of summary judgment practice in the United States District Court for the Central District of California. The motion should be denied on this basis alone.

### E.    Plaintiff's Fourth Amendment Claim Should Survive

Plaintiff has presented sufficient evidence to show that she was seized under the meaning of the Fourth Amendment. A person is seized when an officer terminates or restrains her freedom of movement using physical force, through means intentionally applied. *Brendlin v. California*, 551 U.S. 249, 254 (2007) (quoting *Terry v. Ohio*, 392 U.S. 1, 19, n. 16 (1968) and *Brower v. County of Inyo*, 489 U.S. 593, 597 (1989)).

On the other hand, a person is not seized when the officer's conduct is accidental. For example, in *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), the Supreme Court held that no seizure occurred where an officer accidentally ran over a passenger who had fallen off a motorcycle during a high-speed chase. The Court stressed that the officer stopped the passenger's movement "by accidentally crashing into him, not 'through means intentionally applied.'" *Id.* at 844 (quoting

19

*Brower*, 489 U.S. at 597). Following this reasoning, courts have held that where an officer fires at a suspect and an errant bullet accidentally strikes an innocent bystander, no Fourth Amendment seizure of the bystander occurs.

Defendants read these cases to mean that there is no Fourth Amendment violation when a bystander is stopped by an officer's use of physical force unless that "force was intentionally applied to her for the purpose of restraining her liberty." *Motion* at 16. But this is an overly broad reading of the case law.

The fact that the Fourth Amendment generally does not reach accidental conduct has no application where the officer's intentional act foreseeably and necessarily affects persons beyond the intended target. The Ninth Circuit and other courts have recognized multiple categories of cases where innocent bystanders are seized despite not being the officer's primary target.

In *Villanueva v. California*, 986 F.3d 1158 (9th Cir. 2021), officers shot at a slowly moving car during a pursuit, killing the driver and wounding a passenger who they did not even know was in the vehicle. The Ninth Circuit held that the innocent passenger was "seized," and dismissed the officers' argument that the passenger could not be seized because he was not the intended target. The court distinguished *Lewis*, where an officer accidentally collided with a motorcycle, explaining that "if the officer had intentionally collided with the motorcycle to stop it, the injured passenger would also have been seized." *Id.* at 1167. The distinction turns on whether the instrumentality that stopped the plaintiff was intentionally deployed—not whether the officer specifically intended to seize that particular individual.

In *Nelson v. City of Davis*, 685 F.3d 867 (9th Cir. 2012), officers argued that they had not seized the plaintiff when he was hit by a pepperball that was fired into a group of which was a member because they "did not specifically intend to target Nelson." *Id.* at 876. The Ninth Circuit rejected this argument:

> This argument misapprehends the distinction between
> intentional and unintentional conduct that the Supreme
> Court has repeatedly held as determinative of the Fourth
> Amendment analysis . . . . [T]he officers' conduct
> resulted in Nelson being hit by a projectile that they
> intentionally fired towards a group of which he was a
> member. Their conduct was intentional, it was aimed
> towards Nelson and his group, and it resulted in the
> application of physical force to Nelson's person as well
> as the termination of his movement. Nelson was therefore
> intentionally seized under the Fourth Amendment.

*Id.* at 876–77.

Courts have applied the same reasoning in novel circumstances, as well. For example, courts hold that when officers deploy a police dog—an instrumentality incapable of discriminating between suspects and bystanders—everyone in the deployment zone may be seized. *See Garcia v. City of Sacramento*, 2010 WL 3521954, at *2 (E.D. Cal. Sept. 8, 2010); *Vathekan v. Prince George's Cty.*, 154 F.3d 173, 178 (4th Cir. 1998). The reasoning is that "when officers intentionally deploy a dog, which is incapable of discriminating suspects from bystanders and is trained to bite whoever it encounters, the officers effectively intend to seize anyone in the space where the dog was deployed." *Rodriguez v. City of Fresno*, 819 F. Supp. 2d 937, 947 (E.D. Cal. 2011); *see also Gangstee v. Cnty. of Sacramento*, 2012 WL 112650, at *5 (E.D. Cal. Jan. 12, 2012).

This case bears little resemblance to the errant-bullet cases Defendants cite. *E.g. Rodriguez v. Cnty. of Los Angeles*, 654 F. Supp. 3d 1029, 1048 n. 8 (C.D. Cal. 2023) (addressing errant bullet fact pattern and specifically distinguishing it from

vehicle pursuit cases).[1] A bullet has a very small strike zone—when an officer aims at a suspect and the bullet deviates from its intended path and strikes a bystander, that is a true accident. But a PIT maneuver creates a much larger zone of danger and is more analogous to a shotgun blast or a grenade than a single bullet. In *Craighead v. Lee*, 399 F.3d 954 (8th Cir. 2005), an officer fired a shotgun at a suspect who was next to an innocent bystander. The blast killed the bystander and wounded the suspect. The Eighth Circuit held that the officer violated the bystander's Fourth Amendment rights because he "fired the shotgun in circumstances in which he knew or should have known that he would hit both" men. *Id*. at 961–62. The same principle applies here. A PIT maneuver does not have a precise strike zone—it creates an uncontrolled, spinning vehicle whose path cannot be predicted or contained. Officer Cadiz did not aim at a discrete target and accidentally miss; he unleashed a multi-ton projectile into a crosswalk where a pedestrian was clearly visible. Like the officer in *Craighead*, he used force in circumstances where he knew or should have known it would strike someone beyond his intended target.

These cases share a common thread that distinguishes them from the true accident cases like *Lewis* and the errant-bullet line of cases. The key inquiry is whether the plaintiff was "stopped by the very instrumentality set in motion or put in place in order to achieve that result." *Brower* 489 U.S. at 599. When an officer intentionally deploys force knowing that it will necessarily affect people beyond the primary target, those people are seized. The instrumentality that stops them is the same instrumentality the officer intentionally set in motion. This is true whether the instrumentality is a vehicle (as in *Brendlin* and *Villanueva*), a pepperball barrage (as in *Nelson*), a police dog (as in *Garcia*), a shotgun blast (as

---

[1] Defendants misread *Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000), which did not have a holding related to the Fourth Amendment.

1    in *Craighead*), or—as here—a disabled suspect vehicle sent careening into a

2    crosswalk.

3            Defendants' own citations support this distinction. In *Rodriguez v. City of*

4    *Fresno*, the court found that the bystander struck by a bullet intended for the

5    suspect was not seized but noted that its finding would be different if the officer

6    believed "that the bullet would indiscriminately hit anyone in the area" 819 F.

7    Supp. 2d 937, 948 (E.D. Cal. 2011).

8            Here, Plaintiff was seized because (1) Cadiz intentionally rammed the

9    suspect's vehicle to disable it; (2) that disabled vehicle is the very instrumentality

10    that struck Plaintiff; and (3) Cadiz acted despite seeing Plaintiff and knowing she

11    would be struck.

12            For all these reasons, Plaintiff has presented sufficient evidence from which

13    a reasonable jury could find that she was seized. Because that is the only element

14    of her Fourth Amendment claim challenged in the Motion, summary judgment

15    should be denied.

16        **F.    Plaintiff's Due Process Claim Should Survive**

17            Due process violations under the Fourteenth Amendment occur when

18    official conduct "shocks the conscience," *Wilkinson v. Torres*, 610 F.3d 546, 554

19    (9th Cir. 2010), but what that means "depends on the context." *Tennison v. City*

20    *and Cnty. of San Francisco*, 570 F.3d 1078, 1089 (9th Cir. 2009). The deliberate

21    indifference standard applies when the officer has time to deliberate and would

22    satisfy a due process violation that "shocks the conscience." *Tennison*, 570 F.3d at

23    1089. A higher standard—purpose to harm—only applies in situations "that

24    escalate so quickly that the officer must make a snap judgment." *Porter v. Osborn*,

25    546 F.3d 1131, 1137–40 (9th Cir. 2008) (collecting cases). However, the "snap

26    judgment" to use deadly force must be a reaction to an unforeseen escalation by

27    the subject. *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1230 (9th Cir. 2013).

28

1  "When a citizen suffers physical injury due to a police officer's negligent

2  use of his vehicle, no section 1983 claim is stated . . . It is a different story when a

3  citizen suffers or is seriously threatened with physical injury due to a police

4  officer's intentional misuse of his vehicle." *Checki v. Webb*, 785 F.2d 534, 538

5  (5th Cir. 1986) (Fourteenth Amendment claim). This is not merely a case of

6  negligence. Officer Cadiz made a deliberate decision to execute a dangerous

7  vehicle intervention technique—ramming his patrol vehicle into Escareno's slowly

8  moving car—that caused Escareno's vehicle to spin out of control and directly into

9  Plaintiff's path. Cadiz did this despite having seen Plaintiff in the crosswalk

10 several seconds before. Plaintiff's substantive due process claim should survive

11 summary judgment under either applicable standard.

12           1.    The Deliberate Indifference Standard Applies Because Officer

13                 Cadiz Had Time to Deliberate

14 Defendants argue that *Lewis* and *Onossian* should provide the framework for

15 this case, and that those cases require the court to apply the purpose-to-harm

16 standard. However, in both cases, the court's holding was specific to "high-speed"

17 pursuits, and neither court has applied a blanket rule to all pursuits.

18           In the circumstances of a **high-speed chase** aimed at

19           apprehending a suspected offender, **where unforeseen**

20           **circumstances demand an instant judgment** on the part

21           of an officer who feels the pulls of competing

22           obligations, only a purpose to cause harm unrelated to the

23           legitimate object of arrest will satisfy the shocks-the-

24           conscience test.

25 *Lewis*, 523 U.S. at 834 (emphasis added). The purpose-to-harm standard clearly

26 applied because the suspect's "outrageous behavior was practically instantaneous,

27 and so was [the officer's] instinctive response." *Id*. at 855; *see also Onossian v.*

28

*Block*, 175 F.3d 1169 (9th Cir. 1999) at 1172 (holding purpose-to-harm standard applies to "high speed chase").

This case is fundamentally different from *Lewis* and *Onossian* because the incident in question did not happen during a *high-speed* chase. In the first paragraph of their Motion, Defendants describe Cadiz's conduct as a "low-speed" PIT maneuver. *Motion* at 1. In his deposition, Cadiz said the vehicle slowed to 2–5 miles per hour; in his initial statement, he says it "almost stopped." Not only was he nearly stopped, but his vehicle was clearly disabled as the front wheel was blown out and smoke was spewing from the vehicle. *Lewis* and *Onossian* very carefully limited their holding to "high-speed" pursuits and did not create a blanket rule for all pursuits. Therefore, they are not dispositive on these facts.

The question, then, is whether Officer Cadiz was reacting instinctively to an instantaneous threat or whether he had time to deliberate. The evidence supports the latter. Officer Cadiz made a deliberate tactical choice to execute a vehicle intervention technique—a decision that requires assessment of the surrounding environment, the suspect's trajectory, and the risks to bystanders. The video evidence demonstrates that Plaintiff was visible in the crosswalk for approximately nine seconds before Officer Cadiz chose to execute the maneuver. A jury viewing that footage could reasonably conclude that Officer Cadiz saw Plaintiff, recognized she was directly in the path where a spinning vehicle would travel, and made the conscious decision to ram Escareno's vehicle anyway.

Nine seconds is not instantaneous. It is not a "split-second" reaction. It is time enough to observe, assess, and decide on a course of conduct. Officer Cadiz had the opportunity to recognize the danger to Plaintiff and to choose a different course of action. He chose not to. Indeed, Officer Cadiz admitted in his deposition that if he had known a pedestrian was in the crosswalk, he would not have chosen to ram Escareno's vehicle. This is an acknowledgment that he had time to

LAW OFFICES OF
**DALE K. GALIPO**
CIVIL RIGHTS ATTORNEYS

incorporate such information into his decision-making—the very definition of
deliberation. The deliberate indifference standard therefore applies.

### 2. Officer Cadiz Acted with Deliberate Indifference

Under the deliberate indifference standard, a plaintiff may prevail by
showing that the officer "disregarded a known or obvious consequence of his
action." *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011). The
"deliberate-indifference inquiry should go to the jury if any rational factfinder
could find this requisite mental state." *Id.*; *see also Nicholson v. City of Los
Angeles*, 935 F.3d 685, 693 (9th Cir. 2019).

The video evidence establishes that Plaintiff was visible in the crosswalk for
approximately five to nine seconds before Officer Cadiz executed the vehicle
intervention. A jury could find that Officer Cadiz saw her. A jury could find that he
recognized she was a pedestrian in the immediate zone of danger. And a jury could
find that he chose to ram Escareno's vehicle anyway, knowing that a spinning, out-
of-control car was likely to strike her.

Any reasonable officer trained in vehicle intervention techniques would have
recognized that executing such a maneuver in close proximity to a pedestrian
creates an obvious and severe risk that the suspect's vehicle—now spinning out of
control—could strike that pedestrian. Officer Cadiz himself acknowledged as
much when he testified that he would not have rammed Escareno's vehicle had he
known Plaintiff was in the crosswalk. He understood the risk. A jury could find
that he saw Plaintiff and disregarded it anyway.

A rational factfinder could conclude that Officer Cadiz acted with deliberate
indifference to Plaintiff's safety. Summary judgment should be denied.

### 3. Alternatively, Cadiz Acted with Purpose-to-Harm

Even if the purpose-to-harm standard applies, Plaintiff's claim survives
because the facts here are nothing like *Lewis* or *Onossian*, and because the Ninth
Circuit's recent decision in *Est. of Soakai v. Abdelaziz* establishes that Plaintiff

26

1  need only show Officer Cadiz acted with a purpose to harm the suspect. 137 F.4th

2  969, 980 (9th Cir. 2025).

3      In *Lewis*, when the officer saw the motorcycle was disabled, he slammed on

4  his brakes and skidded 147 feet before accidentally colliding with it. 523 U.S. at

5  837. He was trying to stop. Here, the opposite occurred—when Officer Cadiz saw

6  Escareno slow to a near stop with a disabled wheel and an open door, he

7  accelerated. *Onossian* is even further afield: there, the officer never attempted a

8  vehicle intervention at all, and the suspect's vehicle struck bystanders after running

9  a red light. 175 F.3d at 1170.

10      The question, then, is whether Officer Cadiz's use of force exceeded

11  legitimate law enforcement purposes. A jury could find that it did.

12      A proper vehicle intervention technique requires the officer to match the

13  speed of the target vehicle. Officer Cadiz was trained in this requirement. Yet

14  when Escareno slowed nearly to a stop, unbuckled his seatbelt, and opened his

15  door, Officer Cadiz did not slow down—he sped up. A jury could infer that Officer

16  Cadiz was not attempting a controlled pursuit termination. He was attempting to

17  inflict maximum harm on a suspect who was in the process of surrendering.

18      Ramming a nearly stationary vehicle at speed, when the driver is unbuckled

19  with his door open, creates an obvious risk of catastrophic injury. The force is

20  wildly disproportionate to any legitimate need to arrest a suspect who is already

21  stopping and whose car is visibly disabled. And if such force is unjustifiable as to

22  the suspect, it is even more egregious when a pedestrian stands visible in the

23  crosswalk just ahead. Officer Cadiz's decision to accelerate rather than decelerate

24  reveals that his purpose was not to arrest Escareno safely—it was to harm him.

25  Under *Soakai*, Plaintiff has stated a viable substantive due process claim.

26

27

28

**G.     Issues Not Raised by Defendants Are Waived**

Arguments raised for the first time in a reply brief are waived. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007); *Graves v. Arpaio*, 623 F.3d 1043, 1050 n.3 (9th Cir. 2010).

Defendants' Motion does not assert qualified immunity as to either federal claim. On the Fourth Amendment claim, Defendants challenged only whether a seizure occurred—not whether the force was reasonable or the law clearly established. On the Fourteenth Amendment claim, Defendants argued only that Plaintiff cannot satisfy the purpose-to-harm standard—not that they are entitled to qualified immunity. Therefore, Defendants have waived any argument based on the doctrine of qualified immunity.

Defendants address Plaintiff's state law claims solely through immunity under the Vehicle Code. They do not argue that Officer Cadiz's conduct was not negligent, do not dispute causation, and do not contest any other element of Plaintiff's state law claims. If the Court denies immunity, Defendants have offered no alternative basis for summary judgment to be granted in their favor.

**V.     CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment should be denied in all respects. The motion is moot as to state law claims against Officer Cadiz in his individual capacity, as Plaintiff agrees to dismiss those claims.

Dated: January 16, 2026          **LAW OFFICES OF DALE K. GALIPO**

By:   */s/   Cooper Alison-Mayne*
Dale K. Galipo
Cooper Alison-Mayne
*Attorneys for Plaintiff*

28

**Certificate of Compliance**

The undersigned, counsel of record for Plaintiff, certifies that this brief contains **6,843** words, which complies with the 7,000 word limit of L.R. 11-6.1.

Dated: January 16, 2026          **LAW OFFICES OF DALE K. GALIPO**

By:    /s/   *Cooper Alison-Mayne*
         Dale K. Galipo
         Cooper Alison-Mayne
         *Attorneys for Plaintiff*