**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Cooper Alison-Mayne (SBN 343169)
cmayne@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA SALAZAR,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>CITY OF TORRANCE; RYAN CADIZ; JOHN ESCARENO JR.,<br><br>　　　　Defendants. | Case No.: 2:24-CV-07692-DMG-JC<br>Judge Gee<br><br>**PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS**<br><br>Date:　February 6, 2026<br>Time:　2:00 p.m.<br>Crtrm: 8C |

1

# PLAINTIFFS' STATEMENT ADDITIONAL MATERIAL FACTS

Pursuant to Local Rule 56-2 and this Court Standing Order, Plaintiff respectfully submits her Statement of Additional Material Facts.

| Plaintiffs' Additional Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| 1. On January 11, 2024, Officer Ryan Cadiz was patrolling near the Del Amo Fashion Center in Torrance when he received a radio report that the Los Angeles Sheriff's Department was pursuing a carjacked vehicle that had pulled into a nearby parking structure. | Declaration of Ryan Cadiz [ECF No. 48] at ¶ 4. |
| 2. Shortly thereafter, officers learned that the same suspect, later identified as John Escareno, had stolen a second vehicle—a silver Toyota Prius—and was located near the Del Amo Fashion Center food court. | Cadiz Decl. ¶ 5. |
| 3. For portions of the pursuit Cadiz did not have his sirens, on even though he was running through red lights at high speeds. | **Exhibit C** at 2. |
| 4. Cadiz attempted to "box in" the Prius, but Escareno drove around him and continued eastbound on Carson Street. | Cadiz Decl. ¶ 6. |
| 5. A vehicle pursuit ensued, with Officer Dennis Gonsalves on a police motorcycle initially serving as the primary unit and Cadiz as the secondary unit. | Cadiz Decl. ¶ 6–7. |
| 6. Cadiz later assumed primary responsibility for the pursuit. | Cadiz Decl. ¶ 7. |
| 7. The pursuit lasted approximately four minutes and covered multiple streets, including Carson Street, Crenshaw Boulevard, and Sepulveda Boulevard. | Cadiz Decl. ¶¶ 7–8. |

2

| Plaintiffs' Additional Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| 8. Toward the end of the pursuit, while driving on the wrong side of Sepulveda Boulevard, Escareno suddenly turned back into the correct lane and slowed down directly in front of Cadiz. | Declaration of Cooper Alison-Mayne ("Mayne Decl."), **Exhibit A**, Video of Incident, 00:00:03. |
| 9. Cadiz did not slow down; he rammed Escareno's vehicle from behind, sending it careening towards the other cars at the busy intersection of Sepulveda Boulevard and Vermont Avenue. | **Exhibit A** at 00:00:06. |
| 10. Cadiz claims the first time he struck suspect's vehicle was an accident, due to his brakes going out. | Declaration of Cooper Alison-Mayne ("Mayne Decl."), **Exhibit B**, Deposition of Ryan Cadiz at 52:8–14. |
| 11. Escareno drove up onto the sidewalk to maneuver around the cars that were stopped in front of him. | **Exhibit A** at 00:00:10 |
| 12. Cadiz turned to the right to follow Cadiz's path on the sidewalk. | **Exhibit A** at 00:00:11 |
| 13. Escareno then entered the intersection of Sepulveda Boulevard and Vermont Avenue, began to slow down, almost came to a stop, and opened his door. | Mayne Decl., **Exhibit C**, Ryan Cadiz Supplemental Report (Escareno's "vehicle had significantly slowed down, and almost stopped"); Cadiz Depo. at 60:11–17; **Exhibit A** at 00:00:14–15. |
| 14. On the sidewalk Cadiz reduced his speed to approximately 5–10 miles per hour. | **Exhibit B**, Cadiz Depo. at 18:6–9 |
| 15. Cadiz decided to ram Escareno's vehicle after he saw the vehicle slow down and "almost stop." | **Exhibit C**, Cadiz Report at 2 (He decided to execute the PIT maneuver after seeing the vehicle slow down and "almost stop."); **Exhibit B**, Cadiz Depo. 15:3–18 (Cadiz decided to execute the PIT maneuver "when the suspect drove up onto the sidewalk . . . While he was leaving at slow speed."); **Exhibit B**, Cadiz Depo. 16:18–25 (He |

3



| Plaintiffs' Additional Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| | decided to execute the PIT maneuver when he reached the intersection.) |
| 16. Suspect vehicle was going 2 to 5 miles per hour when Cadiz decided to execute the PIT. | **Exhibit B**, Cadiz Depo. at 17:9–12. |
| 17. After slow down, Escareno opened the driver's side door of his vehicle. | **Exhibit A** at 00:00:16. |
| 18. Not only was Escareno nearly stopped, but his vehicle was clearly disabled as the front wheel was blown out and smoke was spewing from the vehicle. | Mayne Decl. **Exhibit D**, Screenshots from Body Worn Camera; Mayne Decl. **Exhibit E**, Screenshots from Exhibit A; Mayne Decl. **Exhibit F**, Screenshot from Motorcycle Officer Camera. |
| 19. After deciding to ram Escareno's vehicle, Cadiz accelerated his vehicle to 32 miles per hour. | **Exhibit B**, Cadiz Depo. at 18:1–5. |
| 20. Prior to accelerating he was going 5 to 10 miles per hour. | **Exhibit B**, Cadiz Depo. at 18:6–9 |
| 21. Cadiz decided to ram Escareno's vehicle *approximately five seconds before the collision*, just prior to when he can be seen accelerating toward the vehicle. | **Exhibit A** at 00:00:16. |
| 22. Cadiz knew the brakes were shot at time he initiated PIT stop | **Exhibit B**, Cadiz Depo. at 39:18–25 |
| 23. Cadiz did not turn his car to the left to avoid the collision. | **Exhibit A** at 00:00:15–21.. |
| 24. Cadiz did not turn the wheel in an attempt to turn his car to the left to avoid the collision. | Mayne Decl. **Exhibit G**, Screenshots from Body Worn Camera; Mayne Decl. **Exhibit H**, Screenshots Officer Body Worn Camera. |
| 25. Cadiz's vehicle was capable of turning after he accelerated to execute the PIT maneuver. | **Exhibit A** at 00:00:12–14 (Officer Cadiz is seen successfully turning his vehicle to the left.). |
| 26. Cadiz's vehicle was capable of rapidly braking after he accelerated to execute the PIT maneuver. | **Exhibit A** at 00:00:10–14 (Officer Cadiz is seen using his brakes to slow down significantly and drive up onto the sidewalk.) |

4

| Plaintiffs' Additional Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| 27. Officer Cadiz's vehicle collides Escareno's, causing Escareno to completely lose control of the car and sending it careening into the crosswalk where it strikes Plaintiff. | **Exhibit A** at 00:00:12–14; **Exhibit B**, Cadiz Depo. at 70:9-11 ("The car wasn't driving. It was spinning around. So I don't know the speed it was spinning when it struck the pedestrian.") |
| 28. Plaintiff was crossing the street as a pedestrian in the crosswalk on a green light. | **Exhibit A** at 00:00:12–21; Mayne Decl. **Exhibit J**, Screenshots from Exhibit A. |
| 29. Cadiz was familiar with the intersection where the collision occurred and knew that it had crosswalks. | **Exhibit B**, Cadiz Depo. at 12:6–11 |
| 30. Cadiz was looking at the marked crosswalk the entire time from when he got up to the curb to the time of the collision. | **Exhibit B**, Cadiz Depo. at 81:2–5 (Q. When you came back into the street, did you look in that area again before entering the intersection, meaning the marked crosswalk area? A. I was looking at the marked crosswalk the entire time from what I got up to the curb and was following that car to the intersection.); **Exhibit B**, Cadiz Depo. at 59:23–60:2 (Cadiz was looking at the crosswalk area both before and after he entered the intersection); **Exhibit B**, Cadiz Depo. at 30:24–31:2 (Cadiz looked for pedestrians in the crosswalk before he started accelerating.). |
| 31. From six seconds before the collision through the moment of impact, Plaintiff is clearly visible in the marked crosswalk. | **Exhibit A** at 00:00:15–21. |
| 32. In his initial statement, Cadiz admitted that he saw Plaintiff "[a]s he closed the distance with the vehicle." | **Exhibit C**, Cadiz Report at 2. |
| 33. Cadiz believes, under the circumstances of this case, it would | **Exhibit B**, Cadiz Depo. at 31:8–15 |

5

| Plaintiffs' Additional Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| not be appropriate to PIT a vehicle if a pedestrian were in the crosswalk because of the danger that the PITed vehicle could spin out and there would be "no chance of them not getting hurt." | |
| 34. Plaintiff, who was 67 years old at the time, is first visible in the marked crosswalk nine seconds before the collision. | **Exhibit A** at 00:00:12–21. |
| 35. Once a car rotates 27 degrees during a PIT maneuver, the laws of physical create an "unrecoverable skid" | Mayne Decl. **Exhibit K**, Deposition of Michael Guell at 49:23–50:1 |
| 36. At that point, "the driver of the suspect vehicle is no longer in control" of the vehicle. | **Exhibit K**, Guell Depo. at 50:2–4 |
| 37. A PIT maneuver involves four steps: (1) the officer must match the speed of the suspect vehicle; (2) the officer must make gentle contact with the rear quarter panel of the suspect vehicle; (3) the officer implements approximately a quarter turn of steering into the suspect vehicle to induce rotation; and (4) the officer continues around the rotating suspect vehicle to a safe location. | **Exhibit K**, Guell Depo. at 45:18-46:7. |
| 38. There is a lower-limit issue with being able to conduct a PIT maneuver when the target vehicle is traveling too slowly, so officers are trained to do PIT maneuvers on vehicles going a minimum speed of 15 miles per hour. | **Exhibit K**, Guell Depo. at 37:20-21; 49:9–14 ("There's other tactics that would be used for a stopped vehicle, to prevent a pursuit. But a PIT maneuver would not be the appropriate tool. That would be like asking somebody, "Would you ever use a piece of bread to nail in a nail?" It just doesn't make any logical sense.) |
| 39. A PIT maneuver is not an appropriate tool for a stopped | **Exhibit K**, Guell Depo. at 48:22-49:8 |

6

| Plaintiffs' Additional Material Facts | Plaintiffs' Supporting Evidence |
|---|---|
| vehicle; there are other tactics that would be used for a stopped vehicle. | |
| 40. Officers are not trained to conduct a PIT maneuver on a stopped vehicle. | **Exhibit K**, Guell Depo. at 48:22-49:8 |
| 41. The maneuver executed by Cadiz was not a PIT maneuver because it did not follow any of the four steps outlined above. | Cadiz failed all four steps: he accelerated to 32 miles per hour while the suspect vehicle was nearly stopped (PAMF 16, 19, 20); he rammed the vehicle from behind with such force that it went careening toward other cars rather than making gentle contact with the rear quarter panel (PAMF 9); he did not turn his steering wheel at all (PAMF 23, 24); and he did not continue around to a safe location but instead caused the vehicle to spin uncontrollably into the crosswalk where it struck Plaintiff (PAMF 27); **Exhibit A** at 00:00:12–21. |
| 42. Escareno was steering to the right in an effort to pass Plaintiff without striking her | **Exhibit A** at 00:00:18–21. |
| 43. Cadiz saw Plaintiff prior to deciding to ram Escareno's vehicle. | Cadiz was looking at the marked crosswalk the entire time from when he got up to the curb to the time of the collision (PAMF 30), Plaintiff was first visible in the crosswalk nine seconds before the collision (PAMF 34), Plaintiff was clearly visible from six seconds before the collision through the moment of impact (PAMF 31), and Cadiz did not decide to ram Escareno's vehicle until approximately five seconds before the collision (PAMF 21); accordingly, a jury could find that Cadiz saw Plaintiff before he decided to ram Escareno's vehicle. |





| | |
|---|---|
| Dated: January 16, 2026 | **LAW OFFICES OF DALE K. GALIPO** |
| | By: /s/  *Cooper Alison-Mayne* |
| | Dale K. Galipo |
| | Cooper Alison-Mayne |
| | *Attorneys for Plaintiff* |