Mark J. Austin (SBN 208880)
maustin@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
18300 Von Karman Avenue, Suite 650
Irvine, California 92612-1032
Tel: 949.863.3363 Fax: 949.863.3350

Attorneys for Defendants
CITY OF TORRANCE and RYAN CADIZ

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

MARIA SALAZAR,

        Plaintiff,

        v.

CITY OF TORRANCE, RYAN CADIZ, AND JOHN ESCARENO JR.,

        Defendants.

Case No. 2:24-CV-07692-DMG-JC

Judge: Hon. Dolly M. Gee
Dept.: 8C

**DEFENDANTS CITY OF TORRANCE AND RYAN CADIZ'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**[FRCP 56]**

**Hearing:**
Date: February 6, 2026
Time: 2:00 p.m.
Dept.: 8C

Burke, Williams & Sorensen, LLP
Attorneys at Law
Orange County

1

Case No. 2:24-CV-07692-DMG-JC
DEFS' REPLY TO PL'S OPPOSITION TO DEFS'
MOTION FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ......................................................................................... 1

II.   ARGUMENT .............................................................................................. 1

  A.   Plaintiff Has Failed to Demonstrate a Material Dispute of Fact
       Regarding the City's Entitlement to Immunity Under Cal.
       Vehicle Code Section 17004.7 ............................................................ 1

       1.   Sgt. Guell Has Sufficient Foundation Regarding the City's
            Training and Sufficiently Establishes Compliance with the
            One-Hour Requirement; *Flores* is Inapplicable Here ................... 2

            a.   Sufficient foundation is established for Sgt. Guell ........... 2

            b.   Compliance with the "one-hour" training
                 requirement .............................................................. 3

       2.   California Case Law Only Requires the City to Establish a
            *Requirement* of Certification, Not Compliance ............................ 6

       3.   On-Point Law Establishes that Section 17004.7 Applies
            Even Where the Police Vehicle Impacts the Suspect's
            Vehicle ...................................................................... 8

  B.   Plaintiff Acknowledges that Officer Cadiz is Immune from
       Liability for Plaintiff's State-Law Claims Under California
       Vehicle Code section 17004 ............................................................ 13

  C.   Plaintiff Has Only Cited a Statutory Basis for Her Negligence
       Claim ...................................................................................... 13

  D.   Plaintiff Has Failed to Demonstrate any Material Disputed Facts
       on Her Federal Claims ................................................................. 14

       1.   Plaintiff's excessive force claim is without merit ...................... 14

       2.   Plaintiff's Fourteenth Amendment claim is without merit ......... 17

       3.   Plaintiff's procedural arguments should be rejected .................. 19

III.  CONCLUSION .......................................................................................... 20

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Orange County

i

Case No. 2:24-CV-07692-DMG-JC
DEFS' REPLY TO PL'S OPPOSITION TO DEFS'
MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Bingue v. Prunchak*,
  512 F.3d 1169 (9th Cir. 2008) ................................................................. 18, 19

*Bublitz v. Cottey*,
  327 F.3d 485 (7th Cir. 2003) ................................................................. 15, 16, 17

*Claybrook v. Birchwell*,
  199 F.3d 350 (6th Cir. 2000) ................................................................. 15

*County of Sacramento v. Lewis*,
  523 U.S. 833 (1998) ................................................................. 15, 17, 18, 19

*Craighead v. Lee*,
  399 F.3d 954 (8th Cir. 2005) ................................................................. 16

*Garcia v. City of Sacramento*,
  2010 WL 3521954 (E.D. Cal. Sept. 8, 2010) ................................................................. 16

*Nelson v. City of Davis*,
  685 F.3d 867 (9th Cir. 2012) ................................................................. 15, 16

*Onossian v. Block*,
  175 F.3d 1169 (9th Cir. 1999) ................................................................. 17, 18, 19

*Rodriguez v. County of Los Angeles*,
  654 F. Supp. 3d 1029 (C.D. Cal. 2023) ................................................................. 15

*Estate of Soakai v. Abdelaziz*,
  137 F.4th 969 (9th Cir. 2025) ................................................................. 19

*Villanueva v. California*,
  986 F.3d 1158 (9th Cir. 2021) ................................................................. 15

*Wilkinson v. Torres*,
  610 F.3d 546 (9th Cir. 2010) ................................................................. 18, 19

 BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
ORANGE COUNTY

ii

Case No. 2:24-CV-07692-DMG-JC
DEFS' REPLY TO PL'S OPPOSITION TO DEFS'
MOTION FOR SUMMARY JUDGMENT

**State Cases**

*Chilcote v. San Bernardino County*,
     218 Cal. 444 (1933) ................................................................. 12

*Doe v. Los Angeles County Dept. of Children & Family Services*,
     37 Cal.App.5th 675, 686 (2019) ........................................... 13

*Flores v. City of San Diego*,
     83 Cal.App.5th 360 (2022) ................................................. 3, 4

*Hilts v. Solano Cty.*,
     265 Cal.App.2d 161, 171 (1986) .......................................... 13

*Lewis v. County of Sacramento*,
     93 Cal.App.4th 107 (2021) .......................................... *passim*

*Morgan v. Beaumont Police Dept.*
     246 Cal.App.4th 144 (2016) .................................................. 7

*Ramirez v. City of Gardena*,
     5 Cal.5th 995 (2018) ............................................. 6, 7, 8, 9

*Searcy v. Hemet Unified School Dist.*,
     177 Cal.App.3d 792, 798 (1986) .......................................... 13

*Weaver v. State of California*,
     63 Cal.App.4th 188 (1998) ............................................ 9, 10

*Yarrow v. State*,
     53 Cal.2d 427 (Cal. 1960) ................................................... 13

**State Statutes**

Cal. Code Regs. § 1081 ................................................... 2, 3, 4

Cal. Gov. Code § 815 ........................................................... 13

Cal. Penal Code § 13519.8 ......................................... *passim*

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Orange County

iii

Case No. 2:24-CV-07692-DMG-JC
DEFS' REPLY TO PL'S OPPOSITION TO DEFS'
MOTION FOR SUMMARY JUDGMENT

1

Cal. Veh. Code

§ 17001 ...................................................................................... 12, 13

§ 17004 ............................................................................................. 13

§ 17004.7 .................................................................................... *passim*

§ 17004.7(a) ...................................................................................... 10

§ 17004.7(d) ....................................................................................... 3

§ 17004.7(f) ........................................................................................ 5

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
ORANGE COUNTY

iv

## I.    <u>INTRODUCTION</u>

In her opposition to Defendants' motion for summary judgment ("Opposition") (Dkt. 53), Plaintiff Maria Salazar ("Plaintiff") relies on unsupported factual assertions, speculation, and outright misrepresentations of the law in an unsuccessful attempt to create a material dispute of fact. For the reasons set forth in this reply brief, Plaintiff's efforts fail, and Defendants City of Torrance ("City") and Officer Ryan Cadiz ("Cadiz," and collectively with the City, "Defendants") are entitled to summary judgment on all of Plaintiff's claims in her First Amended Complaint ("FAC") (Dkt. 1-2).

## II.    <u>ARGUMENT</u>

### A.    <u>Plaintiff Has Failed to Demonstrate a Material Dispute of Fact Regarding the City's Entitlement to Immunity Under Cal. Vehicle Code Section 17004.7</u>

In its motion for summary judgment ("Motion") (Dkt. 44), the City argued that it is entitled to immunity from Plaintiff's state-law claims under California Vehicle Code section 17004.7 ("Section 17004.7") based on the undisputed facts that (1) the City maintained a vehicular-pursuit policy (the "Pursuit Policy") that complies with the requirements of Vehicle Code section 17004.7, (2) the City provides annual training on the Pursuit Policy that was designed to comply with, and that covers all subjects required by, the requirements of Section 17004.7 and California Penal Code section 13519.8, and (3) the City requires that, at the conclusion of training on the Pursuit Policy, every officer must certify in writing that they have received, read, and understand the Pursuit Policy. (Motion at 8-10, 11-13 [Dkt. 44]; Defs' Exh. 2; Declaration of Michael Guell in Support of MSJ ("Original Guell Decl."), ¶¶ 3-6, 8-9 [Dkt. 50]; Defs' SSUF Nos. 1-3 [Dkt. 47].)

In her Opposition and Separate Statement of Disputed Facts ("SSDF") (Dkt. 53-2), Plaintiff does not dispute that the City's Pursuit Policy meets the requirements of Section 17004.7. (Oppo. at 11:28 – 12:1 [Dkt. 53]; Pls' SSDF No. 1

Burke, Williams & Sorensen, LLP
Attorneys at Law
Orange County

1

Case No. 2:24-CV-07692-DMG-JC
DEFS' REPLY TO PL'S OPPOSITION TO DEFS'
MOTION FOR SUMMARY JUDGMENT

[Dkt. 53-2].) However, Plaintiff makes a number of other arguments against the applicability of Section 17004.7, each of which should be rejected, as discussed in the following sections of this reply brief.

### 1. Sgt. Guell Has Sufficient Foundation Regarding the City's Training and Sufficiently Establishes Compliance with the One-Hour Requirement; *Flores* is Inapplicable Here

Plaintiff first argues that Defendants' evidence fails to establish that the City provides the training on its Pursuit Policy that is required by Section 17004.7 because (1) Sgt. Michael Guell purportedly does not have foundation to testify to that issue (Pls' SSDF No. 2 [Dkt. 53-2]), and (2) Sgt. Guell's declaration does not *specifically state* that the training on the Pursuit Policy is at least "one hour" in length, as required by California Penal Code section 13519.8 (which indirectly incorporates POST training standards under 11 Cal. Code Regs. § 1081) (Oppo at 12-13 [citing *Flores v. City of San Diego*, 83 Cal.App.5th 360, 380-81 (2022)].) Each of these arguments should be rejected.

### a. Sufficient foundation is established for Sgt. Guell

With respect to the issue of foundation, Sgt. Guell testified that he is a Sergeant with the Torrance Police Department ("TPD"), that he has held that position for four years, and that, in his specific role at the TPD, he "*oversee[s] training* on various aspects of the TPD's Policy Manual, *including training on the Pursuit Policy*." (Original Guell Decl., ¶ 2 [Dkt. 50] [emphasis added].) He also testified that he personally teaches the training on the Pursuit Policy to many officers in the TPD. (*Id.* at ¶ 6.)

This is sufficient to establish a foundation that Sgt. Guell has personal knowledge regarding the City's Pursuit Policy and the training provided by the TPD on that policy. Indeed, to remove any doubt, Sgt. Guell expressly testified that he "ha[s] personal knowledge of the facts set forth in this declaration, and, if called as a witness in this matter, [he] could and would testify competently thereto under oath."

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
ORANGE COUNTY

2

Case No. 2:24-CV-07692-DMG-JC
DEFS' REPLY TO PL'S OPPOSITION TO DEFS'
MOTION FOR SUMMARY JUDGMENT

(*Id.* at ¶ 1.) This argument is thus a red herring. In fact, Plaintiff deposed Sgt. Guell (*see* Pl's Exh. K), and yet she has presented no evidence that contradicts his testimony regarding the City's training.

### b.    Compliance with the "one-hour" training requirement

With respect to the "one hour" training requirement, Plaintiff is wrong on both the facts and the law. Factually, although Sgt. Guell does not specifically list the one-hour requirement in his declaration, he nevertheless establishes compliance with that requirement by testifying as follows: (1) that "[t]he TPD created its Pursuit Policy, ***and its associated training curriculum provided to its officers***, to be consistent with California Vehicle Code section 17004.7, ***California Penal Code section 13519.8***, and ***Peace Officer Standards and Training ("POST") standards*** relating to vehicular pursuits," and (2) that the City provides this annual training on the Pursuit Policy "to all officers of the TPD, as required by California Vehicle Code section 17004.7." (Original Guell Decl., ¶¶ 4, 5 [Dkt. 50].)

In this regard, the one-hour requirement is established by POST's vehicular-pursuit training standards, which are set forth in section 1081 of Title 11 of the California Code of Regulations ("Section 1081"), the authority for which is established by Penal Code section 13519.8 ("Section 13519.8"). 11 C.C.R. § 1081; Cal. Pen. Code § 13519.8; *Flores*, 83 Cal.App.5th at 380-81. These standards, in turn, are incorporated into Section 17004.7's training requirements in subdivision (d), which cites Section 13519.8 as part of its definition of "regular and periodic training." Cal. Veh. Code § 17004.7(d); *Flores*, 83 Cal.App.5th at 384-87.

In light of this, by testifying that the TPD's training curriculum was specifically crafted to comply with "California Penal Code section 13519.8" and "the [POST] standards relating to vehicular pursuits," and that this training is provided annually to "all officers of the TPD, as required by California Vehicle Code section 17004.7," Sgt. Guell established that the City complied with the one-hour requirement of the POST standards. Indeed, there are many specific

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Orange County

3                Case No. 2:24-CV-07692-DMG-JC
DEFS' REPLY TO PL'S OPPOSITION TO DEFS'
MOTION FOR SUMMARY JUDGMENT

requirements of Section 13519.8 and the POST standards under Section 1081. However, Sgt. Guell did not testify to each of them individually, but instead testified to compliance with those requirements generally. (Original Guell Decl., ¶¶ 4, 5 [Dkt. 50].) Notably, in reciting compliance with Section 13519.8 and Section 17004.7, Sgt. Guell specifically testified that he has "read and understand[s] the contents of these statutes," meaning he understood and intended to convey that the requirements of those statutes are met by the City's training. (*Id.* at ¶ 5.)

Plaintiff, in contrast, has presented no evidence that the City's training is ***less*** than an hour, or any evidence on training at all. This is notable given that Plaintiff deposed Sgt. Guell and had an opportunity to explore this issue. (Pl's Exh. K.)

The *Flores* case relied upon by Plaintiff—which found that the City of San Diego had failed to establish compliance with the one-hour requirement in its motion for summary judgment—is distinguishable. There, the ***only*** evidence in the record regarding the length of the city's pursuit training was that the city showed its offices a short video on the subject that was only 25 minutes and 50 seconds in length. *Flores*, 83 Cal.App.5th at 369, 392. The court observed that "the record on summary judgment suggests that the City's training was ***less*** than an hour in duration" because "the City offered no evidence that its vehicle pursuit policy training included anything *beyond* the mere screening of the 25 minute, 50 second video." *Id.* at 392 (bold italics added). Meanwhile, unlike here, the record in *Flores* reflected no general statement by the city that its training curriculum was crafted to comply with the POST training standards or Section 13519.8. Under those circumstances, the court held that "the undisputed facts did not establish [the] conclusion" that the one-hour requirement was complied with. *Id.*

Here, in contrast to *Flores*, the undisputed facts ***do*** establish that the one-hour requirement was met, through the above-referenced passages from Sgt. Guell's declaration. Although Sgt. Guell establishes compliance with the POST standards and the requirements of Section 13519.8 by discussing them generally, there is

Burke, Williams & Sorensen, LLP
Attorneys at Law
Orange County

4

Case No. 2:24-CV-07692-DMG-JC
DEFS' REPLY TO PL'S OPPOSITION TO DEFS'
MOTION FOR SUMMARY JUDGMENT

nothing improper about this approach. Contrary to Plaintiff's interpretation, the *Flores* court did ***not*** establish a rule that the one-hour requirement must be specifically called out and identified in an agency's testimony, any more than any of the other specific requirements of the pertinent statutes and regulations. On the contrary, it merely states that, like the other POST standards and requirements of Section 13519.8, the undisputed evidence must "establish compliance" with them. That has been done here through the uncontradicted testimony of Sgt. Guell.

Finally, to the extent necessary to address this issue, the City submits herewith a supplemental declaration of Sgt. Guell, in which he specifically testifies that the City's vehicular-pursuit training is, and throughout his tenure has been, greater than one hour in length, generally closer to one-and-a-half hours, in compliance with the POST standards. (Supplemental Declaration of Sgt. Michael Guell in Support of City's Reply Brief ("Suppl. Guell Decl."), ¶ 4.) Sgt. Guell further testifies (1) that the TPD is fully aware of POST's standards, including the one-hour requirement, (2) that the TPD's training curriculum on vehicular pursuits was designed specifically to meet this and the other POST requirements, and (3) that, in his original declaration in support of the City's motion for summary judgment, he was intending to convey compliance with these POST standards, including the one-hour requirement. (*Id.*)

If the Court deems necessary, the City proposes that Plaintiff be given an opportunity to address this additional evidence through additional briefing. Under Section 17004.7, subdivision (f), whether the City has complied with subdivisions (c) and (d) of Section 17004.7 (including whether its Pursuit Policy and associated training are legally sufficient under that provision) is a question of law for the Court. Cal. Veh. Code § 17004.7(f). Thus, it would be more appropriate to address this argument via further briefing than to hold a trial on this issue alone.

Based on the foregoing, Plaintiff's argument regarding the one-hour training requirement should be rejected.

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Orange County

5

Case No. 2:24-CV-07692-DMG-JC
DEFS' REPLY TO PL'S OPPOSITION TO DEFS'
MOTION FOR SUMMARY JUDGMENT

## 2. **California Case Law Only Requires the City to Establish a *Requirement* of Certification, Not Compliance**

Plaintiff's second argument relates to the City's requirement that all of its officers certify in writing that they have received, read, and understand the Pursuit Policy. (Defs' SSUF No. 3 [Dkt. 47]; Guell Decl. ¶ 5.) Critically, Plaintiff acknowledges in her Separate Statement that this fact is *undisputed*. (Pls' SSDF No. 3 [Dkt. 53-2].) However, Plaintiff argues that this fact is "irrelevant" because, according to Plaintiff's incorrect interpretation of the law, the City was allegedly required to show that *all* of its officers—or at least a "substantially compliant" number—actually signed such a certification. As discussed below, this argument has been expressly rejected by the very case Plaintiff relies upon. *See Ramirez v. City of Gardena*, 5 Cal.5th 995 (2018) (holding that agency need merely establish a requirement of certification, not compliance with that requirement).

*Ramirez* is a California Supreme Court case that involved facts nearly identical those here. In *Ramirez*, the innocent passenger of a stolen vehicle was killed when the vehicle crashed into a light pole after a pursuing officer intentionally struck the vehicle as part of a Pursuit Intervention Technique ("PIT"), in an effort to stop it. *Ramirez*, 5 Cal.5th at 997. In its motion for summary judgment, the defendant city produced evidence that it had a vehicular-pursuit policy in place, that it provided training on the policy "on at least an annual basis," and that "*[a]s part of that training, officers were ___required___ to certify electronically that they had received, read, and understood the pursuit policy*." *Id.* at 998 (emphasis added). Also, although ultimately deemed irrelevant to the court's conclusion, the city also produced certifications from *five to six years before the incident*, showing that 64 of its 92 officers (70%) had signed certifications. *Id.*

The sole issue before the California Supreme Court concerned the factual showing the city was required to make with respect to the certification requirement under Section 17004.7. The plaintiff argued (as Plaintiff does here) that the city was

required to show that all of its officers had executed written certifications, consistent with the (now rejected) case of *Morgan v. Beaumont Police Dept.* (2016) 246 Cal.App.4th 144 ("*Morgan*"). *Ramirez*, 5 Cal.5th at 998. The Court of Appeal had disagreed with the plaintiff and disapproved of *Morgan*, holding that, under the language of Section 17004.7, "it suffices if a public agency ***imposes*** the certification requirement," and that "[b]ecause the City's pursuit policy imposed such a requirement," the city was entitled to summary judgment. *Id.* (emphasis added).

After analyzing the language of Section 17004.7, the California Supreme Court agreed with the holding of the Court of Appeal and likewise rejected the *Morgan* case. *Id.* at 1000-01. The Court stated: "Here, the statutory language resolves the issue. Section 17004.7, subdivision (b)(2), does not say that, for the public agency to obtain immunity, all of its peace officers must have made the certification. It says instead that '[p]romulgation' of the policy must include 'a requirement that all peace officers of the public agency certify in writing that they have received, read, and understand the policy.' ***The plain meaning of this language is that the policy must <u>contain</u> the requirement, not that every peace officer must meet the requirement***." *Id.*

In her Opposition, Plaintiff misrepresents *Ramirez*, claiming that it imposes a "substantial compliance" requirement with respect to certification, and that the city in *Ramirez* had established substantial compliance by showing that 64 of its 91 officers (70%) had completed the certification based on five-year-old certifications. Oppo. at 13; *Ramirez*, 5 Cal.5th at 998.

Plaintiff is wrong, and is expressly misrepresenting the holding of *Ramirez*. Neither the California Supreme Court's opinion in *Ramirez*, nor the Court of Appeal's opinion that it affirmed (14 Cal.App.5th 811), imposed a "substantial compliance" requirement or otherwise based its conclusion on the ***number*** of certifications the city was able to produce (which, regardless, were from five to six years before the incident). On the contrary, the California Supreme Court ***expressly***

*declined to address that issue*, stating that, beyond its conclusion that the city need merely show a requirement of certification, "we need not decide when a lack of compliance with the certification requirement or meaningful implementation of the pursuit policy indicates that an agency is not satisfying the statute's requirements," as "[t]hose questions fall outside the scope of the issue presented for our review." *Ramirez*, 5 Cal.5th at 1002. Thus, Plaintiff is completely incorrect in arguing that *Ramirez* requires "substantial compliance."

Nevertheless, even though not required by California law, the City submits herewith evidence on the number of certifications it has in its files for 2023, the year prior to the incident, as part of the supplemental declaration of Sgt. Guell. In that supplemental declaration, Sgt. Guell testifies that, of its 172 officers required to undergo the training in late 2023, 140 have completed certifications in the system. (Suppl. Guell Decl., ¶ 5; Defs' Exh. 7 [attestations].) This represents over 81% compliance, which is higher than the percentage Plaintiff relies upon (albeit erroneously) in *Ramirez*. Although Plaintiff claims that the City has "225 officers," she cites no evidence for that number, and it is incorrect with respect to 2023 and 2024. (Suppl. Guell Decl., ¶ 6.)

Based on the foregoing, Plaintiff's argument regarding the certification requirement should be rejected. *Ramirez* clearly establishes that the City must only demonstrate a requirement of certification, not compliance. Meanwhile, Plaintiff has acknowledged that it is ***undisputed*** that the City imposes such a requirement. (Pls' SSDF No. 3 [Dkt. 53-2]; Guell Decl. ¶ 5.) Thus, the City has met its burden with respect to this requirement.

### 3. On-Point Law Establishes that Section 17004.7 Applies Even Where the Police Vehicle Impacts the Suspect's Vehicle

Finally, Plaintiff argues that the immunity under Section 17004.7 does not apply here because Defendant John Escareno was purportedly not "operating" his vehicle at the time of its collision with Plaintiff, as required by Section 17004.7.

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
ORANGE COUNTY

(Oppo. at 14-15.) According to Plaintiff, this is so because Escareno's vehicle only struck Plaintiff as a result of the PIT maneuver executed by Cadiz, which caused Escareno to lose control of the car, resulting in injury to Plaintiff. (*Id.*)

This argument has been expressly rejected by California case law, which has repeatedly found that Section 17004.7 applies even where the collision of the suspect's vehicle was caused by the pursuing officer, such as through a PIT maneuver. *See Weaver v. State of California*, 63 Cal.App.4th 188, 194-195, 199-201 (1998) (Section 17004.7 applied even where officer executed PIT maneuver that caused suspect's vehicle to crash and injure innocent passenger); *Lewis v. County of Sacramento*, 93 Cal.App.4th 107, 124, 125 (2021) (holding that "section 17004.7 is ***not*** limited" to situations where the police vehicle "is not involved in the collision," but instead that, "***regardless of any collision with a police vehicle***, section 17004.7 immunity applies as long as the injury or death may be said to result from a collision of the suspect's vehicle") (emphasis added); *Ramirez*, 5 Cal.5th at 997, 1000-01 (Section 17004.7 applied where officer executed PIT maneuver that caused suspect's vehicle to crash and kill innocent passenger).

The first case to address this issue head-on was *Weaver v. State of California*, 63 Cal.App.4th 188 (1998). There, the plaintiffs—an innocent child passenger in a fleeing, stolen car—was injured when the car was struck by a police vehicle as part of a PIT maneuver, causing the suspect to lose control of the stolen car and crash into a wall. *Id.* at 192, 194-195. At the time of the PIT, the two vehicles were travelling at approximately 32 miles per hour, and the officer performing the PIT accelerated just before executing it. *Id.* at 194-195. The plaintiff argued that, under these circumstances, the state defendant could not rely on the immunity under Section 17004.7 because that immunity only applied "to collisions that do not involve any intentional or deliberate acts of the pursuing police officers." *Id.* at 200. The court rejected this argument, holding as follows:

The statute is silent as to the nature of the conduct of the peace

Burke, Williams & Sorensen, LLP
Attorneys at Law
Orange County

Case No. 2:24-CV-07692-DMG-JC
DEFS' REPLY TO PL'S OPPOSITION TO DEFS'
MOTION FOR SUMMARY JUDGMENT

officers engaged in the pursuit. There is no express statutory

requirement that the pursuit by the peace officer be conducted in a

particular manner ***or have a particular type of cause and effect***

***relationship with the collision***; the statute requires that the plaintiff's

injuries result from the "collision of a vehicle being operated by an

actual or suspected violator of the law who is being, has been, or

believes he or she is being or has been, pursued by a peace officer ...."

(§ 17004.7, subd. (b).)

*Id.* (emphasis added).

Similarly, Plaintiff's argument was also expressly rejected in *Lewis v. County of Sacramento*, 93 Cal.App.4th 107, 124, 125 (2021), which followed the reasoning in *Weaver*. In *Lewis*, the plaintiffs' son was killed while being pursued by the police, when he began to fall from his fleeing motorcycle and was struck by the pursuing police vehicle. *Id.* at 114. The plaintiffs argued that, because Section 17004.7, subdivision (a), only confers immunity for injuries "resulting from the collision of a vehicle being operated by an actual or suspected violator of the law," it does not apply when the victim was struck by the pursuing police vehicle. *Id.* at 121.

The court rejected this argument, and found that Section 17004.7 applied. First, the court looked at the standard definitions of the terms "resulting from" and "collision," and held that, as matter of plain fact, the decedent was killed as a result of his own motorcycle "colliding" with the street, even if the police vehicle was also involved. *Id.* at 120-21, 124. That is, of course, true here, where Escareno's vehicle "collided" with Plaintiff. With respect to the contributory actions of the pursuing police vehicle, the court followed *Weaver* and held that they were irrelevant. *Id.* at 124-125. The court summarized the law on the issue as follows:

The plain meaning of the language in section 17004.7 is ***not*** limited to

immunizing public entities for injuries or death resulting solely from

the collision of the fleeing suspect's vehicle, ***or from a collision of***

Burke, Williams & Sorensen, LLP
Attorneys at Law
Orange County

10

Case No. 2:24-CV-07692-DMG-JC
DEFS' REPLY TO PL'S OPPOSITION TO DEFS'
MOTION FOR SUMMARY JUDGMENT

*the suspect's vehicle as long as the pursuing police vehicle is <u>not</u> involved in the collision*. And the words of the statute do *not* say there is immunity from liability for injuries or death resulting from the collision of a suspect's vehicle except where the pursuing police vehicle, not the suspect's vehicle, actually inflicts or is involved in inflicting the injuries or death. *Nor* does the language of the statute say the injuries or death must be inflicted "*by*" the collision of the suspect's vehicle, as opposed to "resulting from" the collision of the suspect's vehicle.

\* \* \*

In other words, ***regardless of any collision with a police vehicle***, section 17004.7 immunity applies as long as the injury or death may be said to result from a collision of the suspect's vehicle. Had it intended to restrict the statutory immunity to situations where injury or death resulted *solely* from a collision of the suspect's vehicle, ***without any contributory conduct of the peace office driving a police vehicle***, the Legislature could have drafted section 17004.7 to explicitly reflect that intent. "The drafters and the Legislature did not do so, however, and it is not our function to insert language omitted by the Legislature." (*Diamond Multimedia Systems, Inc. v. Superior Court, supra,* 19 Cal.4th at p. 1054, . . . .)

*Id.* at 124, 125 (emphasis added).

The rationale of the above cases completely disposes of Plaintiff's argument. Under this law, all that is relevant is that Plaintiff's injuries resulted from a "collision" of the suspect's vehicle, which is an undisputed fact here. The alleged contribution or involvement of the police vehicle in causing that collision, either through a PIT maneuver or otherwise, is irrelevant.

Although Plaintiff attempts to avoid the holdings of these cases by arguing

Burke, Williams & Sorensen, LLP
Attorneys at Law
Orange County

11

Case No. 2:24-CV-07692-DMG-JC
DEFS' REPLY TO PL'S OPPOSITION TO DEFS'
MOTION FOR SUMMARY JUDGMENT

that Escareno was not "operating" his vehicle as a result of the PIT maneuver, this is merely the same argument made by the plaintiffs in the above cases under a different guise. Obviously, the suspects in *Weaver* and *Lewis* likewise lost control of their vehicles, with the *Weaver* case even involving a PIT maneuver as the alleged cause. Nevertheless, per the above analysis, the courts held that Section 17004.7 applied, meaning the suspect was nevertheless still "operating" the fleeing vehicle. Indeed, if Plaintiff's proposed definition of "operated by" was accepted, not only would it contradict the above cases, but it would write Section 17004.7 out of existence, in that it would remove the immunity any time the suspect could be said to have "lost control" of its vehicle, which is the case virtually any time a suspect's vehicle is involved in a "collision."

Regardless, Plaintiff's reliance for this argument on the 1933 case of *Chilcote v. San Bernardino County*, 218 Cal. 444 (1933), is completely misplaced. In *Chilcote*, the plaintiff's son was killed when his motorcycle hit a pool of oil in the road. *Id.* at 446. In addition to suing for dangerous condition of public property, the plaintiff also sued under Vehicle Code section 17001 for "negligent operation of a motor vehicle" based on the allegation that, at some ***prior*** time, county vehicles had placed the oil there. *Id.* The court held that these facts did not support a claim under Vehicle Code section 17001 because that section required that the vehicles be "***actively***" in operation "***at the time and place the injury is inflicted***." *Id.* at 445-446 (emphasis added). That holding has no application here, where it is undisputed that Escareno's vehicle was actively being operated by him at the time of the pursuit and collision. Thus, the holding in *Chilcote* is distinguishable and irrelevant.

Based on the foregoing, Plaintiff's argument regarding the "operation" of Escareno's vehicle should be rejected.

\ \ \

\ \ \

\ \ \

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
ORANGE COUNTY

12

Case No. 2:24-CV-07692-DMG-JC
DEFS' REPLY TO PL'S OPPOSITION TO DEFS'
MOTION FOR SUMMARY JUDGMENT

**B.**    **Plaintiff Acknowledges that Officer Cadiz is Immune from Liability for Plaintiff's State-Law Claims Under California Vehicle Code section 17004**

With respect to Officer Cadiz, Plaintiff has conceded that he is immune from her state law claims under California Vehicle Code section 17004. (Oppo. at 15:17-20.) Thus, Officer Cadiz is entitled to summary judgment on those claims.

**C.**    **Plaintiff Has Only Cited a Statutory Basis for Her Negligence Claim**

In response to the City's argument regarding a statutory basis for liability, Plaintiff relies solely on California Vehicle Code section 17001, which states that "[a] public entity is liable for death or injury to person or property proximately caused by a negligent or wrongful act or omission in the operation of any motor vehicle by an employee of the public entity acting within the scope of his employment." (Oppo. at 15-16.) Because this section relates solely to the "negligent operation" of a "motor vehicle," at most, it only applies to Plaintiff's negligence claim—*i.e.*, her First or Second Claim for Relief, which are duplicative. (*Yarrow v. State*, 53 Cal.2d 427, 440 (Cal. 1960) ["effect [of Section 17001] is to impose liability on the public employer for the negligent operation of public vehicles . . ."].) Thus, all of Plaintiff's other state-law claims (such as for negligent and intentional infliction of emotional distress, and strict liability for ultrahazardous activities) fail for lack of any statutory basis. Cal. Gov. Code § 815; *Doe v. Los Angeles County Dept. of Children & Family Services*, 37 Cal.App.5th 675, 686 (2019); *Searcy v. Hemet Unified School Dist.*, 177 Cal.App.3d 792, 798 (1986); *Hilts v. Solano Cty.*, 265 Cal. App. 2d 161, 171 (1986). Regardless, even Section 17001 is overcome by the immunity set forth in Section 17004.7, which is an exception to the liability provided by Section 17001. *Lewis*, 93 Cal.App.4th 107, 117-18.

\ \ \

\ \ \

Burke, Williams & Sorensen, LLP
Attorneys at Law
Orange County

13

Case No. 2:24-CV-07692-DMG-JC
DEFS' REPLY TO PL'S OPPOSITION TO DEFS'
MOTION FOR SUMMARY JUDGMENT

### D.    <u>Plaintiff Has Failed to Demonstrate any Material Disputed Facts on Her Federal Claims</u>

Plaintiff makes various arguments in defense of her federal claims. For the reasons set forth below, those arguments should be rejected.

#### 1.    <u>Plaintiff's excessive force claim is without merit</u>

Plaintiff's excessive force argument rests on a fundamental mischaracterization of Fourth Amendment seizure doctrine. Plaintiff's authorities do not support extending Fourth Amendment liability to a bystander injured collaterally during a police effort to restrain a fleeing suspect's vehicle. Rather, the undisputed facts place this case squarely within the line of cases holding that unintended bystanders are not seized when force is directed at someone else.

In this regard, the following material facts are undisputed in the record, including in the evidence presented by Plaintiff with her Opposition:

- Officer Cadiz was attempting to stop and restrain a fleeing suspect, not Plaintiff. (Cadiz Decl. ¶¶ 5-9 [Dkt. 48]; Defs' Exh. 1.)

- Plaintiff was not suspected of any crime and was not the object of any attempt to restrain. (Cadiz Decl. ¶¶ 3-14 [Dkt. 48]; Defs' SSUF Nos. 7-8 [Dkt. 47].)

- Officer Cadiz observed Plaintiff (technically, the top of her head) only ***after*** initiating the PIT maneuver, but before he made contact with Escareno's vehicle, and he did not direct force towards her. (Cadiz Decl. ¶ 13 [Dkt. 48]; Cadiz Depo., pp. 17:2 – 18:11 [Pl's Exh. B].)

- The time between Cadiz seeing Plaintiff and making contact with Escareno's vehicle was approximately ***one second***. (Cadiz Depo., pp. 17:2 – 18:11 [Pl's Exh. B]; *see also* Defs. Exh. 1 at 0:05:20 – 0:05:22.)

- As clearly shown by the video (Exhibit 1), the time between Cadiz entering the subject intersection and making contact with Escareno's vehicle was approximately ***two seconds***. (Defs. Exh. 1 at 0:05:20 – 0:05:22; *see also* Cadiz Depo., pp. 17:2 – 18:11 [Pl's Exh. B].)

Burke, Williams & Sorensen, LLP
Attorneys at Law
Orange County

14

Case No. 2:24-CV-07692-DMG-JC
DEFS' REPLY TO PL'S OPPOSITION TO DEFS'
MOTION FOR SUMMARY JUDGMENT

- Once the PIT maneuver was initiated, Officer Cadiz was unable to stop contact with the suspect's vehicle before that vehicle struck Plaintiff. (Cadiz Decl. ¶ 13 [Dkt. 48].)

These facts are dispositive because a Fourth Amendment seizure requires a "governmental termination of freedom of movement through means intentionally applied" to the plaintiff. *County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998). Where force is intentionally applied to restrain a suspect, and a third party is injured only as an unintended consequence, no Fourth Amendment seizure occurs as to the third party. The Supreme Court has drawn a clear distinction between "an act directed toward someone that produces a particular result" and "an act that simply causes a particular result that was not sought." *Rodriguez v. County of Los Angeles*, 654 F. Supp. 3d 1029, 1045 (C.D. Cal. 2023). Consistent with this rule, courts have repeatedly held that bystanders injured when police deploy force to stop a fleeing suspect, such as through spike strips or other pursuit-termination tactics, are not seized because the force was not intentionally applied to restrain them. *Bublitz v. Cottey*, 327 F.3d 485, 489–90 (7th Cir. 2003); *Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000).

Plaintiff's authorities each involve facts fundamentally different from those here. In *Villanueva v. California*, 986 F.3d 1158 (9th Cir. 2021), officers intentionally fired live rounds at a vehicle to stop it, fully aware that ***both*** the driver and passenger would be restrained equally by that force. *Id*. at 1163. The passenger was seized because the officers intentionally applied deadly force to the vehicle in which he was riding, ***necessarily*** restraining his movement along with the driver. *Id*. at 1167. Here, by contrast, Plaintiff was not inside the suspect vehicle, was not the object of the force applied, and was not restrained by means intentionally applied to her. (Cadiz Decl. ¶¶ 11-13 [Dkt. 48].)

Plaintiff's reliance on *Nelson v. City of Davis*, 685 F.3d 867 (9th Cir. 2012), is also misplaced. There, officers intentionally fired pepperball projectiles directly into

Burke, Williams & Sorensen, LLP
Attorneys at Law
Orange County

Case No. 2:24-CV-07692-DMG-JC
DEFS' REPLY TO PL'S OPPOSITION TO DEFS'
MOTION FOR SUMMARY JUDGMENT

a confined group of civilians to disperse them, and the Ninth Circuit held that the plaintiff was seized because he was "an object of intentional governmental force" when officers "took aim and intentionally fired in the direction of a group of which Nelson was a member." *Id*. at 875–76. The court emphasized that the force was "knowing and willful," directed at the group itself, and not merely conduct that had unintended effects on a bystander. *Id*. at 876–78. By contrast, the undisputed facts here establish that Officer Cadiz intentionally applied force only to restrain a fleeing suspect's vehicle, not to Plaintiff or to any group that included her..

Plaintiff's reliance on *Garcia v. City of Sacramento*, 2010 WL 3521954 (E.D. Cal. Sept. 8, 2010), is misplaced because that case involved the intentional deployment of a police canine to restrain someone, which is categorically different from a vehicular pursuit-termination maneuver. Unlike a police canine, which is intentionally deployed to seize ***any*** human it encounters, a PIT maneuver is directed at a specific suspect vehicle, and collateral injury to a bystander does not transform that action into a seizure under the Fourth Amendment.

The case of *Craighead v. Lee*, 399 F.3d 954 (8th Cir. 2005), is even further afield. There, an officer intentionally discharged a shotgun in circumstances where, viewing the facts in the plaintiff's favor, a reasonable officer would have known that the blast would strike ***both*** the suspect and an innocent third party. *Id*. at 958-959, 962. That case involved the intentional discharge of lethal force into a ***confined struggle*** between two people. Nothing comparable occurred here. Officer Cadiz did not discharge a weapon toward Plaintiff or into a space occupied by her.

This case instead aligns with pursuit-termination cases such as *Bublitz v. Cottey*, 327 F.3d 485 (7th Cir. 2003), where officers deployed spike strips to stop a fleeing armed-robbery suspect, causing the suspect to lose control of his vehicle and collide with innocent motorists, killing two of them. The Seventh Circuit held that no Fourth Amendment seizure occurred as to the bystanders because the collision was "not a means intended by police to stop the [bystanders], but rather an

Burke, Williams & Sorensen, LLP
Attorneys at Law
Orange County

Case No. 2:24-CV-07692-DMG-JC
DEFS' REPLY TO PL'S OPPOSITION TO DEFS'
MOTION FOR SUMMARY JUDGMENT

unintended consequence of an attempt to seize" the fleeing suspect. *Id*. at 489. Rejecting a "transferred intent" theory nearly identical to the one Plaintiff advances, the court emphasized that although officers intentionally applied force to restrain the suspect's vehicle and could foresee potential harm, it did not follow that they ***intended*** to restrain or seize every person who might be affected by the suspect's loss of control. *Id*. Thus, the court concluded that collateral injury to innocent third parties did not constitute a seizure under the Fourth Amendment, ***even where the officers' actions were deliberate and the risk of harm was known***. *Id*.

That reasoning applies here. Officer Cadiz intentionally applied force to the suspect vehicle to stop a dangerous carjacker. Plaintiff's injury resulted from the suspect vehicle's movement after contact, not from any force intentionally applied to her. ***Foreseeability does not substitute for intent*** under Fourth Amendment doctrine, and Plaintiff's attempt to argue otherwise should be rejected.

Finally, Plaintiff repeatedly urges the Court to assess the "reasonableness" of Officer Cadiz's conduct. That argument fails at the threshold. Absent a seizure, the Fourth Amendment does not apply. Courts do not reach *Graham*-style balancing where no seizure has occurred.

The undisputed facts establish that Plaintiff was not seized. Accordingly, her Fourth Amendment excessive force claim fails as a matter of law.

### 2.    Plaintiff's Fourteenth Amendment claim is without merit

Plaintiff's effort to salvage a substantive due process claim rests on reframing a split-second pursuit-termination decision into a hindsight-driven negligence standard. Again, Ninth Circuit precedent forecloses that approach. Where officers are engaged in an evolving vehicular pursuit involving an actively dangerous suspect, the governing standard is the ***purpose-to-harm*** test, not deliberate indifference, and liability attaches only if the officer acted with a ***purpose*** to cause harm unrelated to legitimate law-enforcement objectives. *County of Sacramento v. Lewis*, 523 U.S. 833, 853–54 (1998); *Onossian v. Block*, 175 F.3d 1169, 1171–72

(9th Cir. 1999); *Bingue v. Prunchak*, 512 F.3d 1169, 1177 (9th Cir. 2008). On the undisputed record here, no reasonable jury could find that standard satisfied.

Plaintiff first contends that Officer Cadiz had "time to deliberate," thereby triggering a lower deliberate-indifference standard. That argument is both factually and legally disingenuous. Legally, Plaintiff's argument misunderstands Ninth Circuit law. The inquiry is not whether an officer had time to consider options, but whether the circumstances permitted "actual deliberation" in a setting free from urgent, rapidly evolving danger. *Lewis*, 523 U.S. at 851–53; *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010). Vehicular pursuits categorically fall on the pressurized side of that divide. *Bingue*, 512 F.3d at 1176–77.

Regardless, this argument is simply wrong under the facts. It is undisputed— including under the very evidence submitted by Plaintiff—that the time between Cadiz entering the subject intersection and making contact with Escareno's vehicle was a mere ***two seconds*** (as shown by the video), and that the time between Cadiz seeing Plaintiff and making contact with Escareno's vehicle was only ***one second***. (Defs. Exh. 1 at 0:05:20 – 0:05:22; *see also* Cadiz Depo., pp. 17:2 – 18:11 [Pl's Exh. B]; see also Cadiz Decl., ¶¶ 11-13 [Dkt. 48].) This does not constitute "time to deliberate" under any reasonable definition. Plaintiff's argument that Cadiz should have aborted the PIT maneuver after observing Plaintiff (in ***one second***) merely invites the Court to second-guess a split-second, on-scene tactical judgment made in real time. The Supreme Court has expressly rejected converting such hindsight criticism into constitutional fault. *Lewis*, 523 U.S. at 850 ("[R]ules of due process are not subject to mechanical application in unfamiliar territory.")

Plaintiff next argues that Cadiz acted with deliberate indifference to Plaintiff's safety. As noted above. accepting that theory would effectively eliminate the purpose-to-harm requirement in pursuit cases and replace it within ordinary negligence review, something the Supreme Court and Ninth Circuit have repeatedly refused to do. *Lewis*, 523 U.S. at 848–49; *Onossian*, 175 F.3d at 1172. The Ninth

18

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
ORANGE COUNTY

Case No. 2:24-CV-07692-DMG-JC
DEFS' REPLY TO PL'S OPPOSITION TO DEFS'
MOTION FOR SUMMARY JUDGMENT

Circuit has made clear that deliberate indifference applies only where officers have the ***time for calm reflection***. *Wilkinson*, 610 F.3d at 554. Not only did Cadiz not have that time here (as noted above), but applying that standard to pursuit-termination decisions would constitutionalize every tactical judgment involving risk, which is inconsistent with *Lewis*. As the Ninth Circuit has explained, even conduct that is foreseeably dangerous, ill-advised, or violates policy does not "shock the conscience" absent an intent to cause harm for reasons unrelated to legitimate law enforcement objectives. *Bingue*, 512 F.3d at 1177; *Onossian*, 175 F.3d at 1172.

Finally, Plaintiff invokes *Estate of Soakai v. Abdelaziz*, 137 F.4th 969, 975–77 (9th Cir. 2025), to suggest that Cadiz acted with a purpose to harm. That reliance is misplaced and inflammatory. *Soakai* involved extraordinary and egregious allegations that officers intentionally sought to cause a suspect to crash, expressed a desire that the suspect die, violated pursuit policy in multiple respects, and then deliberately failed to summon aid after witnessing catastrophic injuries. Those "highly unusual circumstances" drove the Ninth Circuit's decision. *Id.* at 975–77.

Nothing remotely comparable exists here. There is no evidence that Cadiz sought to injure the suspect or Plaintiff, for punitive or retaliatory reasons or otherwise, no statements evincing malice, and no post-incident conduct suggesting indifference to human life. The undisputed facts show only that Cadiz attempted to stop a dangerous fleeing felon to protect the public. Under controlling precedent, that legitimate objective defeats any purpose-to-harm claim as a matter of law. *Lewis*, 523 U.S. at 855; *Onossian*, 175 F.3d at 1172.

The undisputed facts establish that Plaintiff has no claim under the Fourteenth Amendment, and that Defendants are therefore entitled to summary judgment on that claim as a matter of law.

### 3.    <u>Plaintiff's procedural arguments should be rejected</u>

Finally, Plaintiff argues that Defendants' Motion on the federal claims should be denied "at the threshold" for failure to identify material undisputed facts. (Opp. at

Burke, Williams & Sorensen, LLP
Attorneys at Law
Orange County

19

Case No. 2:24-CV-07692-DMG-JC
DEFS' REPLY TO PL'S OPPOSITION TO DEFS'
MOTION FOR SUMMARY JUDGMENT

16-18.) This unspecific argument holds no merit. Defendants' Motion and Separate Statement identified undisputed facts that go directly to the threshold constitutional elements of Plaintiff's Fourth and Fourteenth Amendment claims, such as (1) Cadiz's intent to solely stop the suspect's vehicle, not seize or impact Plaintiff, (2) the intended object of Cadiz's application of force (*i.e.*, Escareno, not Plaintiff), (3) Plaintiff's relationship to the pursuit (*i.e.*, that she was not a suspect or the object of any force applied by Cadiz), and (4) to the extent necessary, the reasonableness of Cadiz's conduct as determined by the TPD's review of his actions. (Defs' SSUF Nos. 7-10 [Dkt. 47].)

Plaintiff does not identify what other specific issues should have been addressed in the Separate Statement that Defendants failed to cite. Nevertheless, by providing the dashcam video showing the entirety of the pursuit (Exhibit 1), a point-by-point walk-through of the pursuit (with timestamp references to the video) from the perspective of Officer Cadiz (Cadiz Decl., ¶¶ 3-14 [Dkt. No. 48]), and clear statements of Officer Cadiz's intent and purpose during the entire pursuit (*id.*), Defendants have provided the entire, limited framework by which the pursuit can be judged, and from which Plaintiff is entitled to make any arguments she has available. Indeed, by virtue of the video and Cadiz's declaration—***which Plaintiff fails to contradict on any point, despite deposing Officer Cadiz***—every relevant fact relating to Plaintiff's federal claims is effectively undisputed. Thus, Plaintiff's argument that the City's Separate Statement was somehow too general or failed to list some specific fact that Plaintiffs claim is relevant, is a red herring. Substantively, every fact relevant to the subject pursuit was presented with the City's Motion.

## III.   <u>CONCLUSION</u>

For all these reasons, Defendants are entitled to summary judgment in this matter on all of Plaintiff's claims in the FAC.

\ \ \

\ \ \

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
ORANGE COUNTY

20

Case No. 2:24-CV-07692-DMG-JC
DEFS' REPLY TO PL'S OPPOSITION TO DEFS'
MOTION FOR SUMMARY JUDGMENT

1

2    Dated: January 23, 2026                    BURKE, WILLIAMS & SORENSEN, LLP

3

4

5    By: _____

6        Mark J. Austin
         Attorneys for Defendants
7        CITY OF TORRANCE and RYAN
         CADIZ
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Orange County

21    Case No. 2:24-CV-07692-DMG-JC
DEFS' REPLY TO PL'S OPPOSITION TO DEFS'
MOTION FOR SUMMARY JUDGMENT

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants City of Torrance and Ryan Cadiz, certifies that this brief contains 6,573 words, which complies with the word limit of L.R. 11-6.1.

Dated:  January 23, 2026                                Mark J. Austin

# PROOF OF SERVICE

## Salazar v. City of Torrance, et al.
## Case No. 2:24-cv-07692-GW-JC

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Orange, State of California. My business address is 18300 Von Karman Avenue, Suite 650, Irvine, CA 92612-1032.

On January 23, 2026, I served true copies of the following document(s) described as **DEFENDANTS CITY OF TORRANCE AND RYAN CADIZ'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address bantle@bwslaw.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 23, 2026, at Irvine, California.

_____
Bernadette C. Antle

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SERVICE LIST**
**Salazar v. City of Torrance, et al.**
**Case No. 2:24-cv-07692-GW-JC**

Dale K. Galipo
LAW OFFICES OF DALE
K. GALIPO

*Attorneys for Plaintiff*
*Maria Salazar*

dalekgalipo@yahoo.com
ldeleon@galipolaw.com
cmayne@galipolaw.com
dgilbert@galipolaw.com

amonguia@galipolaw.com,
coopermayne@recap.email
hlee@galipolaw.com,
msincich@galipolaw.com
rvalentine@galipolaw.com
sanderson@galipolaw.com
slaurel@galipolaw.com

Christian Cardona
CARDONA LAW FIRM
APC

*Attorneys for Plaintiff*
*Maria Salazar*

Christian@Cardonafirm.com

Richard T. Copeland

rtc@conflict-solution.com